Lawrence B. Brennan (LB 4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.
150 East 42nd Street
New York, New York 10017
(212) 490-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
In the Matter of the Complaint of Andrew Harnett, as
owner of vessel M/V READY JET GO for Exoneration
from or Limitation of Liability.

and

In the Matter of Peter J. Sharp Boathouse, Inc., as owner of
the floating vessel constituting the boathouse, seeking
exoneration from or limitation of liability.

and

In the Matter of New York Rowing Association, Inc., as
owner of a 2001, coxless Empacher rowing shell, seeking
exoneration from or limitation of liability.

**1:06-cv-00699(LMM)(GWG)
consolidated with:
1:06-cv-03061(LMM)(GWG), and
1:06-cv-03062(LMM)(GWG)**

-------------------------------------------------------------------------------X

**STATEMENT OF UNDISPUTED MATERIAL FACTS
ON BEHALF OF
NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.
<u>PURSUANT TO RULE 56.1</u>**

Petitioner and Claimant, NEW YORK ROWING ASSOCIATION, INC.

("NYRA" or "the Rowing Association"), and Petitioner, PETER J. SHARP

BOATHOUSE, INC. ("the Boathouse"), by their attorneys WILSON, ELSER,

MOSKOWITZ, EDELMAN & DICKER LLP, as and for their to Statement of Undisputed Material Facts, pursuant to Local Rule 56.1 state as follows:

1.  At or about 6:00 a.m. on October 24, 2005, there were four rowers on board a 45-foot long, coxless racing shell in the Harlem River; James H. Runsdorf, Edward Joyce, Jeff Lundwall and Vincent Houston.  (Judicial admissions in pleadings).

2.  On October 24, 2005, James H. Runsdorf ("Runsdorf") was an operator of a rowing shell on navigable waters of the Harlem River, Bronx County, New York. (Judicial admissions in pleadings).

3.  NYRA was the owner of a rowing shell that was being operated by four men on the Harlem River on the morning of October 24, 2005. (Judicial admissions in pleadings).

4.  On October 24, 2005, Petitioner Andrew Harnett was the owner of READY JET GO, a 29-foot Hinckley, Talaria jet boat.  (Pleadings; Exhibit A, p. 33[1]).

5.  On October 24, 2005, Harnett was the operator of READY JET GO.  (Judicial admissions in pleadings; Exhibit A).

6.  On the morning of October 24, 2005, Harnett was traveling south on the Hudson River from Piermont, New York to Connecticut to have READY JET GO hauled and winterized.  (Exhibit A, p. 33).

7.  Richard Brady was the sole passenger onboard READY JET GO for the voyage to Connecticut that morning.  (Exhibit A, p. 34).

---

[1] Exhibits A through P refer to those Exhibits referenced in the supporting Affidavit of Lawrence B. Brennan.

8.      Brady sat in the front seat of READY JET GO as it traveled south in the Harlem River. (Exhibit A, p. 34).

9.      Exiting the Hudson River, READY JET GO passed through the Spuyten Duyvel Railroad Bridge before it continued west and south in the Harlem River. (Exhibit A, p. 33).

10.     The operator of the railroad bridge opened the bridge for a vessel fitting the description of READY JET GO at 0545 on October 24, 2005. (Exhibit A, p. 34).

11.     READY JET GO struck the bow of the rowing vessel and Mr. Runsdorf, causing his death. (Exhibit D).

12.     After the collision Harnett and his passenger Richard Brady immediately attempted to rescue the rowers from the water. (Exhibit A, p. 33, 34).

13.     Harnett and Brady succeeded in rescuing three men who were brought on board READY JET GO soon after that vessel had struck the rowing shell.

14.     Jim Runsdorf was not located. (Exhibit A)

15.     READY JET GO returned the survivors to the Peter Jay Sharp Boathouse where they received initial medical attention. (Exhibit A).

16.     Harnett told police that the collision occurred at 6:10 a.m. and that it was "still dark" at that time. (Exhibit A, p. 33).

17.     It was before sunrise at the time of the collision. (Exhibit B).

18.     It was before civil twilight at the time of the collision. (Exhibit B).

19.     Police Officer Svend Jensen observed that by the time he arrived on the scene of the collision it was still "pitch-black conditions on the river and very poor visibility." (Exhibit A, p. 32).

20.     The navigator onboard the responding police boat, Police Officer Phillip Shahin, was acting as a lookout as the police vessel approached the scene of the collision and even so, he did not see the rowing shell until they "were on it." (Exhibit A, p. 32).

21.     Jim Runsdorf was in the seat closest to the bow, or the forward most seat of the rowing shell. (Exhibit A; judicial admissions in pleadings).

22.     Given his position in the rowing shell, Runsdorf was responsible for providing commands to the other rowers. (Exhibit A)

23.     Runsdorf had years of experience rowing in the Harlem River. (Judicial admissions in pleadings).

24.     The Inland Navigation Rules require use of a light onboard a rowing vessel. (Exhibit E).

25.     A vessel under oars, including the rowing shell in this matter, must exhibit lights or "she shall have ready at hand an electric torch or lighted lantern showing a white light which shall be exhibited in sufficient time to prevent collision." (Exhibit E).

26.     On the morning of the collision, the rowers did not bring a navigation light aboard with them. (Exhibit A, Exhibit F)

27.     The four rowers did not use navigation lights when operating the racing shell or on October 24, 2005. (Exhibit A, Exhibit F).

28. The rowing shell was in the center of the Harlem River at the time it was struck by READY JET GO. (Exhibit A).

29. The rowing shell was "dead in the water" or not making way when it was struck by READY JET GO. (Exhibit A).

30. After the crew shell went down the 2000 meter course, they turned around and stopped. They were drifting in the river taking a water break and preparing to strip down. (Exhibit G).

31. From his seat in the bow of the rowing shell, Jim Runsdorf was in the best position to act as a lookout for the rowing shell. (Exhibit G).

32. The Runsdorf claimants have asserted that Jim Runsdorf was a real estate investor and entrepreneur with significant income at the time of his death. (Judicial admissions in pleadings).

33. Among the multiple claims against the Rowing Association and the Boathouse in this matter, Claimants allege that they 1) permitted the use of the shell during dark; 2) failed to equip the rowing shell with lights; and 3) failed to have proper training and supervisions of persons using the boat house to make sure that they were aware of and followed the required safety practices. (Exhibit C, ¶ 29, 33, 34, 35, 50, 53, 54, 55).

34. On March 18, 2011 the claimants provided copies of their expert reports by Captain Ahlstrom, Harriet M. Metcalf, and Stephen W. Schulman. (Exhibit H, I, and J, respectively).

35. Captain Ahlstrom was retained by Death Claimants as a navigation expert. (Exhibit H).

36.     Captain Ahlstrom concludes in his expert report that the failure of the rowers, and specifically Runsdorf, to use lights on the morning of October 24, 2005 was not causative. (Exhibit H, p.8).

37.     Harriet (Holly) M. Metcalf was retained by Death Claimants to provide an opinion on the standard of care and accepted custom and practice for the operation of crew boathouses.  (Exhibit I).

38.     Stephen W. Shulman, a certified public accountant in the Litigation, Forensic and Valuation Services Group at Anchin, Block & Anchin, LLP., was retained by the Death Claimants as a financial expert. Mr. Shulamn authored a report in which he claims that based on the distributions and fees Jim Runsdorf received in the five years prior to his death, and after discounting for certain taxes, personal consumption and reductions to present value, the Runsdorf claimants are entitled to an award in the range of $20.4 million. (Exhibit J, ¶62).

39.     Jim Runsdorf's on-again, off-again business colleague, Ken Cohen, provided a summary of his ventures with Jim Runsdorf. (Exhibit K).

40.     Mr. Cohen's summary indicates that any business deals Jim Runsdorf was involved in were tentative, and subject to market conditions and other factors which were beyond the control of the business partnerships and ventures of which Jim Runsdorf was a part.  (Exhibit K).

41.     The majority of Mr. Shulman's opinion is based on documents produced by the Runsdorf claimants in anticipation of mediation on the matter in October 2008.  (Exhibit J).

42.     Mr. Shulman does not cite any tax returns or financial documents that were
        filed after 2006 and it is not clear whether he reviewed documentation filed
        after 2006. (Exhibit J).

43.     On February 4, 2011, this Court issued an Order requiring the Runsdorf
        claimants to produce "all expert reports not later than March 18, 2011, and all
        documents that will be referred to in any expert report not later than February
        18, 2011." (Exhibit L).

44.     Subsequent to the February 4, 2011 order, the Runsdorf claimants produced
        three productions of financial documents, however most were duplicative of
        the financial documents previously produced and NYRA and the Boathouse
        made further requests for financial documents, particularly for those
        documents relied on by Mr. Shulman in his report. (Exhibit M).

45.     The Runsdorf claimants then made three additional productions, again mostly
        duplicative, but containing approximately 250 additional documents. (Exhibit
        N).

46.     With a single exception – the 2008 tax returns of Nina, Katherine and Alexa
        Runsdorf (Exhibit O) – the Runsdorf claimants produced no documentation
        concerning Jim Runsdorf's interests/business deals or hedge funds relating to
        their performance from 2006 forward, which could provide insight into claims
        for loss of income or lost inheritance.

47.    The 2008 tax returns for Nina, Katherine and Alexa Runsdorf show that certain investments and ventures in which Jim Runsdorf held an interest prior to his death, are now under the ownership of his wife and daughters.  (Exhibit O).

48.    Further, certain investments now under ownership of Nina, Katherine and Alexa Runsdorf, continue to produce returns, and in certain circumstances, appear to have spawned other ventures which are now also in the ownership of the Runsdorf claimants. (Exhibit O).

49.    Documentary evidence of the performance of Jim Runsdorf's investments and business ventures in the years since his death does exist, according to the testimony of Nina Runsdorf during her deposition on July 25, 2011.  Ms. Runsdorf testified during she has continued to review and file tax returns and to monitor her husband's share of the investments, leases, and mortgages he held at the time of his death.  (Exhibit P).

Dated:   New York, New York
         September 28, 2011

                                                    Yours, etc.

                                                    WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _Lawrence B. Brennan_

Lawrence B. Brennan (LB4078)
*Attorneys for Peter J. Sharp*
*Boathouse, Inc.* and,
*New York Rowing Association, Inc.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

Of Counsel:

Lawrence B. Brennan
Brooke Travis
Abigail Nitka

9

## CERTIFICATE OF SERVICE

I, Brooke Travis, hereby certify that I electronically filed the attached Local Rule 56.1 Statement on behalf of the New York Rowing Association and the Peter J. Sharp Boathouse, with the Clerk of the Court using the CM/ECF system which will send notification of such filing electronically to the following:

Marc Jay Bern, Esq.
Marina Zapantis, Esq.
Napoli Bern Ripka, LLP
*Attorneys for the Runsdorf Claimants*
350 5th Ave., Ste. 7413
New York, New York  10118

James E. Mercante, Esq.
Michael Evan Stern, Esq.
Rubin, Fiorella & Friedman, LLP.
*Attorneys for Mr. Andrew Harnett*
292 Madison Avenue, 11th Fl.
New York, New York  10017

Jacob Shisha, Esq.
Tabak, Mellusi & Shisha
*Attorneys for the Runsdorf Claimants*
29 Broadway
New York, New York  10006

/s/  Brooke Travis