UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In the Matter of the Complaint
Of ANDREW HARNETT                                                Docket No.: 06-cv-0699(LMM)
(LMM)

In the Matter of Peter J.
Sharp Boathouse                                                  Docket No.: 06-cv-3061 (LMM)

In the Matter of New York Rowing
Association, Inc.                                                Docket No.: 06-cv-3062 (LMM)

And a fourth related case
------------------------------------------------------------X

RUNSDORF CLAIMANTS' IN LIMITATION MEMORANDUM IN OPPOSITION TO
HARNETT, PETITIONER IN LIMITATION'S MOTION FOR SUMMARY JUDGMENT

Of Counsel:
Marc Jay Bern
Jacob Shisha

**Napoli, Bern, Ripka, LLP**
350 Fifth Avenue, Suite 7413
New York, NY 10118

**Tabak, Mellusi & Shisha LLP**
29 Broadway, Suite 2311
New York, NY 10006

ATTORNEYS FOR NINA AND LEE RUNSDORF

Jacob Shisha
Tabak, Mellusi & Shisha LLP
29 Broadway, Suite 2311
New York, NY 10006

and

Marc Jay Bern
Napoli, Bern, Ripka, LLP
350 Fifth Avenue, Suite 7413
New York, NY 10118

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................... 1

ARGUMENT ................................................. 3

POINT I - STANDARD FOR SUMMARY JUDGMENT ................... 3

POINT II - HARNETT DID NOT COMPLY WITH THE NAVIGATION
RULE ........................................... 4

    1. The Accident did not Occur in Darkness .................... 4

    2. Harnett did not Operate His Vessel at a Safe Speed .......... 6

    3. Harnett did not Maintain a Proper Lookout. ................ 6

    4. Harnett was on the Wrong Side of the River. ............... 7

POINT III - THE ALLOCATION OF LIABILITY IN A COLLISION REQUIRES
FACTUAL DETERMINATION BY THE COURT AS TO
COMPARATIVE FAULT OF EACH PARTY ................. 9

POINT IV - HARNETT'S VIOLATION OF INLAND RULES 2, 5, 6, 9, 23
AND HIS FAILURE TO EXERCISE PRUDENT SEAMANSHIP
CAUSED THE COLLISION ........................... 13

CONCLUSION .............................................. 15

**TABLE OF AUTHORITIES**

**Cases**                                       **Page**

Anderson v. Liberty Lobby, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . 3

Celotex Corp. v. Catren, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chambers v. TRM Copy Centers Corp., 43 F.3d 29 (2d Cir. 1994). . . . . . . . . . . 4

Ching Sheng Fishery Co. v. United States, 1996 WL 161789 (S.D.N.Y.)
affd. 124 F.3d 152 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..10

Ciferelli v. Village of Babylon, 93 F.3d 47 (2d Cir. 1996). . . . . . . . . . . . . . . . . . 4

City of Law Cruces v. El Paso Electric Co., 904 F.Supp. 1238 (D. N.M. 1995). .4

Complaint of Seiriki Kisen Kaisha, 629 F.Supp. 1374 (S.D.N.Y. 1986). . . . . . . 13

D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998). . . . . . . . . . . . . . . . 3

Davis v. Superior Oil Co., 510 F.Supp. 1162 (E.D.La. 1981). . . . . . . . . . . . . . . 13

Delaware & Hudson Railway Co. v. Consolidated Rail Corp. 902 F.2d 174
(2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Distasio v. Perkin Elmer Corp. 157 F.3d 55 (2d Cir. 1998). . . . . . . . . . . . . . . . . 4

Duet v. Delta marine Drilling Company, 215 F.Supp. 989 (E.D. La. 1963). . . . .14

Gallo v. Prudential Residential Services Ltd. Partnership, 22 F.3d 1219
(2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

Grosse Ile Bridge Co. v. Am. S.S. Co., 2006 W#L 680855 (E.D.Mich.). . . . . . . .13

Hill v. Linahan, 697 F.2d 1032 (11th Cir. 1983), reh. den. 701 F.2d 947. . . . . . .4

In re Ocean Food Boat Co. 692 F.Supp. 1253 (D.Or. 1988). . . . . . . . . . . . . . . . .13

In the Matter of Interstate Towing, Inc., 717 F.2d 752 (2d Cir. 1983) . . . . . . . . . 14

Knight v. U.S. Fire Insurance Co., *804 F.2d 9* (2d Cir. 1986),
cert. den. 480 U.S. 932 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

L.B. Foster Co. v. American Piles, Inc. 138 F.3d 81 (2d Cir. 1998). . . . . . . . . . . . . 4

Maritime & Mercantile International LLC v. United States, 2007 WL 690094
(SDNY). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

Montana v. First Fed. Sav. & Loan Assn., 869 F.2d 100 (2d Cir. 1989)............3

Moore v. Matthews, 445 F.Supp.2d 516 (D.Md. 2006).......................13

The Pennsylvania, 86 U.S. (Wall) 125 (1873)...........................2, 10, 11

Rose & Lucy Inc. v. F/V Saint Anna Maria, 252 F.Supp. 76 (D. Ma. 1966)........14

Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997)......................4

Silver v. City Univ. of New York,
    947 F.2d 1021 (2d Cir. 1991)...................................3

Stolt Achievement, Ltd. v. Dredge B.E. Lindhold, 447 F.3d 360 (5th Cir. 2006). 2, 9, 10, 13

Turemeco Maritime Inc. Weeks Dredge No 516, 872 F.Supp. 1215 (S.D.N.Y. 1994).. 13

United States v. Reliable Transfer Co., 421 U.S. 397 (1975)...............2, 9, `0, 12

**Statutes and Regulations**

33 U.S.C. 2002 (Inland Rule 2)................................2, 8, 10

33 U.S.C. 2005..........................................2, 8, 10, 14

33 U.S.C. 2006..........................................2, 8, 10, 14

33 U.S.C. 2009...........................................2, 7, 8, 10

33 U.S.C. 2023..........................................2, 8, 10, 15

33 U.S.C. 2025......................................................11

## PRELIMINARY STATEMENT

On the morning of October 24, 2005 the motorboat READY JET GO, owned and operated by Andrew Harnett, despite knowing that rowers were on the Harlem River and knowing that the visibility on the river was not ideal, motored down the wrong side of the Harlem River at an unsafe speed and without proper lights and an obscured window. As a result of this, the vessel collided with a 4 man rowing shell on the Harlem River, killing Jim Runsdorf.

Petitioner previously moved for summary judgment which the Court denied finding that there were issues of facts with regard to:

1. The time of the collision and the lighting conditions;

2. The speed of the M/V Ready Jet Go;

3. Whether the glass and plastic windshields of the M/V Ready Jet Go were obscured with dirt; and

4. Where the M/V Ready Jet Go was operating on the river.

After discovery was completed, petitioner has once again moved for summary judgment. As before, there are still questions of fact with regard to the above issues.

The facts will show that the accident was caused in whole or in part by the acts of the M/V Ready Jet Go. If the rowers were in any way at fault, it would only go to contributory negligence and would not result in summary judgment for petitioner.

Harnett has admitted that when he went by the Peter J. Sharp Boathouse (where the crew shells were based), he saw that the lights were on and that he had to be careful because there would be crew shells out on the water. Despite this knowledge he continued down the river at 16 to 17 mph, an unsafe speed under the conditions. The cockpit of the Harnett boat was enclosed by a windshield and a clear plastic cover that

were so dirty they obstructed the operator and passenger's view. Despite evidence that the crew shell should have been visible to Harnett under the existing conditions: plenty of ambient light, twilight with a moon out, Harnett did not see the crew shell until he was right on top of it.

Nina and Lee Runsdorf Claimants in Limitation ("Runsdorf") maintain that Harnett violated Inland Rules of the Road ("Inland Rule") 5 by failing to have a proper look-out; Inland Rule 6 by failing to proceed at a safe speed under the prevailing conditions; Inland Rule 2 failure to practice proper seamanship by slowing down and taking action to avoid rowing shells in an area where they are known to be; Inland rule 9 by proceeding improperly in a narrow channel; and Inland Rule 23 by not having lights visible on the Harnett boat.

The allocation of liability in a maritime action "is allocated among the parties proportionately to the comparative degree of their fault…:" *Reliable Transfer Co.* 421 U.S. 397 at 410 (1975). That requires a factual determination by the Court of the culpability of each party and cannot be done by summary judgment.

The application of the "Pennsylvania Rule" *The Pennsylvania*, 86 U.S. (Wall) 125 (1873) does not establish fault if a party has been found to have violated a statute intended to prevent collision; rather it shifts the burden to the violating party to prove that its conduct did not and could not have caused the collision. If both vessels violated a statute then the court simply allocates fault on the basis of comparative fault. *Stolt Achievement, Ltd. v Dredge B.E. Lindholm*, 447 F. 3d 360 (5th Cir 2006).

Even if the Pennsylvania Rule were to apply solely to the crew shell and the crew shell did not have a light, liability could not be established because under Inland Rule 25(d)(ii) a boat propelled by oars is only required to have a flashlight that has to be turned on once risk of collision is perceived. Vincent Houston and Edward Joyce, two of

the surviving rowers in the boat, testified that when they first saw the Harnett boat it was only 5 to 10 yards away, heading towards them at a high rate of speed and there was not enough time to point a flash light towards the Harnett boat prior to collision. Thus, the presence of a light could not have prevented the collision thereby rebutting the presumption of causation under the Pennsylvania Rule.

There are still many issues of disputed facts that can only be resolved by proceeding to trial. There is conflicting evidence as to the issues previously before this Court.

## ARGUMENT

### POINT I

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted only if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law". _D'Amico v. City of New York_, 132 F.3d 145, 149 (2d Cir. 1998), cert. den. 118 S.Ct. 2075 (1998); _Gallo v. Prudential Residential Services Ltd. Partnership_, 22 F.3d 1219 (2d Cir. 1994); _Anderson v. Liberty Lobby_, 477. U.S. 242, 250 (1986). See also _Silver v. City Univ. of New York_, 947 F.2d 1021, 1022 (2d Cir. 1991); _Montana v. First Fed. Sav. & Loan Assn._, 869 F.2d 100, 103 (2d Cir. 1989); _Knight v. U.S. Fire Insurance Co._, 804 F.2d 9, 11 (2d Cir. 1986), cert. den. 480 U.S. 932 (1987). It should only be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the non-movant...and draw all reasonable inferences in its favor". _L.B._

*Foster Co. v. American Piles, Inc.*, 138 F.3d 81 (2d Cir. 1998); *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990). In addition, when a summary judgment motion is made, all reasonable doubts must be resolved in favor of the party opposing the motion. *Hill v. Linahan*, 697 F.2d 1032 (11th Cir. 1983) reh. den. 701 F.2d 947, and all facts alleged by the non-movant must be taken as true. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998). (See also *City of Las Cruces v. El Paso Electric Co.*, 904 F.Supp. 1238 (D. N.M. 1995). All facts must be construed in favor of the non-movant. All ambiguities and reasonable inferences must be received against the moving party. *Gallo*, supra at p. 1223; *Knight*, supra at p. 11. See also *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) and *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). If as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

In the present case there are several genuine issues of material fact that must be decided at trial.

## POINT II

## HARNETT DID NOT COMPLY WITH THE NAVIGATION RULES

### 1. The Accident did not Occur in Darkness:

Movant has taken great liberties in evaluating the testimony of the witnesses. While Harnett and his passenger, Richard Brady, make self-serving statements about the lighting conditions, the quotes of the other witnesses are presented in a misleading manner. Movant quotes Jeff Lundwall at p. 46 of his deposition, Exhibit 6, as it being dark when the rowers launched the shell at 6 A.M. However, movant does not present

-4-

the testimony as to what the lighting was like at the time of the collision 22 minutes later. Mr. Lundwall testified at p. 60 of Exhibit C that it was getting light…It was actually pretty light where we were "because there was an MTA facility with a ton of floodlights". He also testified that as soon as they launched it was light from the sky. Exhibit C at p. 67. He could see 100 yards away. Exhibit C at p. 214. With regard to Vincent Houston, his testimony at p. 74 of Exhibit 7 only says that he did not see the sun rise at any time before the accident. Again, it does indicate what the light was like at the time of the accident. In fact, his testimony at pages 69 and 70 of his deposition, Exhibit D, indicates that there was full visibility and there was light.

Edward Joyce, testified at p. 69 of his deposition, Exhibit E, that the area was well lit from huge lamps from the MTA yard like a Christmas tree. With regard to claimant's expert, Captain Ahlstrom, there is no indication that he conceded the accident occurred at night. Movant does not quote this from his report. In fact, the testimony incorporated in Captain Ahlstrom's report was that the vessel was going to transit the Harlem River in the early morning. With regard to light, Captain Ahlstrom indicated at p. 6 that the "3 rowers in the crew shell …stated that there was good visibility, and enough ambient lights from the surrounding facilities and the twilight to see a good distance on the water. (One rower) testified that he could see the seawall on the opposite side of the river. In New York harbor and surrounding rivers there is so much ambient light from the surrounding lights that you do not get a totally black river that you cannot see. This is evidenced by the fact that Harnett testified that when his boat came to a stop after the collision he walked back 8 feet to the stern of the vessel and was able to see the flipped over crew shell and the head of one of the rowers".

Richard Brady testified at p. 84 of his deposition, Exhibit B, that there were lights on at the Peter J. Sharp Boathouse and Mr. Harnett told him there were lights on at the

boathouse. Mr. Brady also testified that immediately after the accident he could see two people in the water and the shell from 50 feet away. Exhibit B p. 96 -97. If it was so dark, how come he could see this from such a distance? The answer is there was sufficient lighting to see, if Mr. Harnett had been paying attention and had an unobstructed view. The evidence clearly shows that there was sufficient lighting on the river for Harnett to have seen the shell if he had been paying attention to the conditions and had a clean windshield.

2.   **Harnett Did not Operate His Vessel at a Safe Speed,**

Movant claims that Captain Ahlstrom did not address how Harnett's speed was unsafe. Movant mischaracterizes once again the opinion of Captain Ahlstrom. Movant alleges that Captain Ahlstrom stated that the M/V Ready Jet Go should have been operated at 4 to 6 m.p.h. This is not in context with what he wrote. He said the vessel should have been operated at that speed "while passing the area where crew shells could be". Exhibit 8, p. 7. That is 4 to 6 mph taking into account the current. Furthermore, due to the dangers of crew shells being in the Harlem River, Mr. Harnett should have transited the entire river at a much lower speed than 16 or 17 mph. Exhibit 8, p. 7. Vincent Houston one of the rowers testified that Harnett admitted that he went by the boathouse, saw the lights on, and there might be rowers out so he better be careful Exhibit D, p. 85 – 86 and 168.

In addition, Captain Ahlstrom indicated that Harnett should have transited the entire river at a much lower speed because of the lighting. Exhibit 8, p. 9. Thus, Harnett violated Inland Rule 6.

3.   **Harnett did not Maintain a Proper Lookout.**

Movant maintains that because he safely traveled across the Hudson River waited for the swing bridge to open and navigated through the upper Harlem River he had no visibility problems. First, the Hudson River is multiple times the width of the Harlem River and there can be no comparison. Second, shells do not use the Hudson River as they do the Harlem River. Third, the fact he may have been fortunate before the accident does not mean the alleged conditions did not exist. It would be like the drunk driver claiming he was not impaired because he was able to start his car, pull out of the driveway and drive a few miles before he had an accident. Nor was Mr. Brady a lookout, as per his own testimony, Exhibit B at p. 58.

The fact that police officers after the accident did not ask Mr. Harnett about the windshield or make any report about it is irrelevant. The police were concerned with a dead rower. They were not nautical experts. Moreover, the police came on the boat about six hours later which would have given Mr. Harnett sufficient time to correct the condition. Exhibit A, p. 179. Also, movant could have obtained a deposition of the police if he felt it supported his position. He did not.

The evidence shows there is a strong and genuine factual dispute about this. Mr. Houston at p. 84 and 130 of Exhibit D testified that the windshield was too dirty to see through. The condition of Mr. Houston at that time is a question going to the weight of the evidence and should be left to the trier of the fact. Mr. Lundwall at p. 206 – 207 of his deposition, Exhibit C also confirms that the plastic was hard to see through.

4. **Harnett was on the Wrong Side of the River.**

Inland Rule 9 (a)(i) provides that " A vessel proceeding along the course of a narrow channel or fairway shall keep it as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable".
It is clear that Harnett violated this rule. Movant's own memorandum of

-7-

law cite the deposition of Houston Exhibit 7 at p. 75-77 that the rowers rowed 'pretty much in the middle of the river' and were still in the center'. Jeff Lundwall testified at p. 53 of Exhibit C that the shell was no more than 20 to 25 yards from the Bronx side of the river. Edward Joyce testified at p. 43 of his deposition, Exhibit E, that the shell was close to the Bronx side, only 2 or 3 swim strokes away. He went on to say at p. 90 that they were close to the MTA yard on the Bronx side and he thought the M/V Ready Jet Go was cutting corners for an approaching turn to the left. The police report, Exhibit 2, page 34 indicates that the collision occurred slightly to the Bronx side of the river.

This is not near the outer limit of the channel where the rowers would have anticipated vessels to be. In the words of movant, the rowers were navigating where the Navigation Rules permitted them to be but the M/V Ready Jet Go was not. There is no evidence that the Harnett vessel could not have proceeded closer to the Manhattan shoreline. Thus, there is another genuine issue of fact as to the location of the collision.

The accident resulted from the violations by Harnett of several nautical rules of the road. Once again movant misconstrues Captain Ahlstrom's findings. Movant alleges that Captain Ahlstrom implies that the other rowers were at fault (the actual language could not be found in the report). However, Captain Ahlstrom clearly indicates at p. 3 of Exhibit 8 that the collision was the fault of the M/V Ready Jet Go and the rowing club.

We have previously showed that the M/V Ready Jet Go violated Rules 2, 5, 6 and 9. Movant also violated Rule 23 in that it failed to have the lights required. Mr. Harnett testified at p. 77 and 79 of Exhibit A that he had no recollection if the running lights were on his vessel. He further testified at p. 191 of Exhibit A that his only recollection of the lights being on was after the accident when his vessel was tied up. Richard Brady,

movant's passenger on his boat, also testified that he could not recall if the lights were on the vessel. Exhibit 5, p. 51. Mr. Lundwall also testified at p. 65 of Exhibit C that he did not see any lights of any vessels on the water that morning. If such testimony is to be believed then the Harnett would be in violation of this Rule.

It is not disputed that the shell did not, unknown to decedent, have any flashlight. However, the rule clearly provides that such a light is not required to be on but only at the ready so that it can be exhibited in sufficient time to prevent collision.

The testimony shows that even if such a light was available, it would not have been able to be exhibited in time. First, the motorized vessel was not properly lit and could not be seen in time. Second, as will be shown, the rowers would not have anticipated the M/V Ready Jet Go to be where it was.

In addition, Mr. Harnett, who was aware that rowers used the Harlem River, testified at p. 313 of Exhibit A that he knew that the use of lights was ignored by the rowing community.

## POINT III

### THE ALLOCATION OF LIABILITY IN A COLLISION REQUIRES A FACTUAL DETERMINATION BY THE COURT AS TO COMPARATIVE FAULT OF EACH PARTY

The allocation of liability in a collision case is to be determined based on the comparative fault of each party *United States v. Reliable Transfer Co.*, 421 U.S. 397, (1975), *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, supra, *Maritime & Mercantile*

*International LLC v. United States,* 2007 WL 690094 (S.D.N.Y.) at page 19.  Violations of the rules of navigation or failure to exercise prudent seamanship constitute negligence and impose liability just as in a common law negligence case, *Turecomo Maritime Inc v. Weeks Dredge No 516,* 872 F. Supp 1215 (S.D.N.Y. 1994) at1219. As indicated by the report of Captain Ahlstrom, Exhibit 8 , and discussed below, Harnett violated the practice of prudent seamanship and Inland Navigation Rules 2[1] General Responsibility, 5 Lookout, 6 Safe Speed and 9, Narrow Channels.  There is also a question of fact as to whether Harnett had his lights on at the time of collision a violation of Inland Rule 23.  Therefore the court must hold a trial, hear evidence to determine the extent that each party failed to practice prudent seamanship and violated the Inland Rules and assign a percentage of fault to each party.

Runsdorf agrees that the "Pennsylvania Rule" *The Pennsylvania,* supra,  applies to this collision.  However, it applies equally to Harnett's violations of the Inland Rules.

Harnett's assertion, in their brief, that The Pennsylvania Rule creates a resumption of fault is incorrect.  The Pennsylvania rules shifts the burden of showing causation. In *Maritime & Mercantile International LLC v United States*, supra Judge Karas set forth a detailed analysis of the operation of the Pennsylvania Rule.

> "Establishing liability in a collision case is eased by the *Pennsylvania* rule, which provides that when a vessel is in violation of a statutory duty, the burden is on the offending vessel to prove that its conduct did not and could not have caused the collision." *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm,* 447 F.3d 360, 364 (5th Cir.2006). To be precise, the rule of the *Pennsylvania* is that when
> a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.
> *\*19 The Pennsylvania,* 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1873), *overruled in part on other grounds by United States v. Reliable Transfer*

---

[1] Inland Rules are found at 33 U.S.C §§2001 to 20038, the last two digits of the section number correspond to the rule number.

-10-

> <u>Co.</u>, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) (adopting proportional fault theory of liability). [FN34] "The so-called 'PENNSYLVANIA Rule' does not ipso facto impose liability; however, it shifts the burden of proof as to causation ... on the party to whom it applies." <u>Ching Sheng Fishery Co. v. United States,</u> No. 93 Civ. 1634, 1996 WL 161789, at *11 (S.D.N.Y. Apr.8, 1996), *aff'd,* 124 F.3d 152 (2d Cir.1997); *see also* Nicholas J. Healy & Joseph C. Sweeney, THE LAW OF MARINE COLLISION 46 (1998) ("[T]he *Pennsylvania* Rule does not create a presumption of fault, but one of causation. The rule, as stated by the U.S. Supreme Court, presupposes that fault has first been proved: It applies when the vessel 'is in actual violation of a statutory rule intended to prevent collision.' " (quoting *The <u>Pennsylvania,</u> 86 U.S. (19 Wall.) at 136*)). [FN35] at p 18 footnotes omitted.

If we are to assume that the crew shell violated Rule 25(d) by not having a flashlight this does not establish that there is no liability on the part of Harnett, nor does it establish that there is any liability on the part of the crew shell. Rather it shifts the burden to the crew shell to show that the lack of a flashlight was not nor could have been a cause of the collision. Rule 25(d)(ii) simply requires that vessel under oars have available a flash light which need not be on all the time.

> 25(d)(ii) A vessel under oars may exhibit the lights prescribed in this Rule, but if she does not, she shall have ready at hand an electric torch or lighted lantern showing a white light which shall be exhibited in sufficient time to prevent collision

In the present case the evidence regarding this issue are the depositions of Vincent Houston, Edward M. Joyce, Jeff Lundwall and the report of Captain Joseph Ahlstrom all of which indicate that even if there was a flashlight (electric torch) aboard the crew shell there was insufficient time to turn it on or even shine it toward the Harnett vessel as to avoid collision. Even under the Pennsylvania Rule Harnett could not establish fault on the part of the crew shell operator. The rowers expected vessels to operate on the proper lane for traffic on the Harlem River. They would have expected vessels traveling south to be on the Manhattan side of the river, not the Bronx side. They, as rowers, would be looking in the direction of vessels traveling north on the Bronx side and had no reason to

expect movant's vessel to be coming at them. Furthermore, Harnett testified at p. 259 - 260 of his deposition, Exhibit A, that the engine is quieter than other powerboats and the manufacturer pays particular attention to the box that covers the motor with significant sound attenuation. This would have made the boat harder for the rowers to hear and given them no time to signal with a flashlight even if they had one. Thus, even if they had a flashlight, they would not, and did not, have enough time to retrieve it and shine it. If movant was proceeding properly, or if movant was going north, they would have seen the vessel and signaled it or moved out of its way. Movant's argument is akin to one made by a driver of a motor vehicle going the wrong way on a one way street and strikes a pedestrian crossing that street after looking at the traffic heading in the correct only was at fault for not looking the other way as well. Clearly, the proximate cause of the accident was movant's vessel being in the wrong lane of travel.

Harnett has not presented indisputable evidence that the individuals in the crew shell failed to maintain a proper lookout under the circumstances. They were not making any speed but rather drifting, they were in an area known to be a crew racing course, and the Harnett vessel was dark blue almost black, and her running lights were not visible. Even if Harnett could establish as a "matter of law" that the crew shell operator violated a Navigation Rule alleging that the violation could have been a cause of the collision the court must still hold a trial to determine if the crew shell operator rebutted the presumption.

Where there are violations of the Navigation Rules on the part of both vessels then the court basically just allocates the comparative fault between the vessels.

> Where more than one vessel is found to be at fault for a collision, liability "is to be allocated among the parties proportionately to the comparative degree of their fault ...." *Reliable Transfer Co.*, 421 U.S. at 410. "Thus, a determination of the parties' liability involves an assessment of their degrees of fault attributable to the accident against the looming

Pennsylvania rule." *Davis v. Superior Oil Co.*, 510 F.Supp. 1162, 1165 (E.D.La.1981). In apportioning liability, the analysis hinges on the "relative culpability of the parties' actions, rather than their respective degrees of physical causation." *In re Ocean Food Boat Co.*, 692 F.Supp. 1253, 1264 (D.Or.1988); *see also Moore v. Matthews*, 445 F.Supp.2d 516, 522 (D.Md.2006) (noting that damages "will be allocated among the parties proportionally to the comparative degree of fault"); *Complaint of Seiriki Kisen Kaisha*, 629 F.Supp. 1374, 1381 n. 3 (S.D.N.Y.1986). As in life, it is not the quantity, but the quality of the collective errors of each party that determines relative fault. *See Grosse Ile Bridge Co. v. Am. S.S. Co.*, No. 92-CV-76556, 2006 WL 680855, at *2 (E.D.Mich. Mar.15, 2006) *Maritime & Mercantile International LLC v United States* supra, at 19.

See also *Stolt Achievement, Ltd. v Dredge B.E. Lindholm* supra, and *Turecomo Maritime Inc v Weeks Dredge No 516* supra

In the instant case there has been no evidence shown that Jim Runsdorf was negligent. Harnett has not established that Jim Runsdorf had any knowledge that the crew shell had no lights. He may have justifiably believed that someone went to get a light and the crew shell. Vincent Houston testified he was the one that went to look for lights Exhibit D pp 65-66 and when he did not find them he did not tell anyone Exhibit D p 68, Houston had a light just as Edward Joyce believed. Once you are in the boat it is very difficult to see if there is a light on the boat. There is no evidence that Jim Runsdorf was even supposed to act as a lookout when the vessel was drifting, let alone that he did not act as a proper lookout.

## POINT IV

### HARNETT'S VIOLATION OF INLAND RULES 2, 5, 6, 23 AND HIS FAILURE TO EXERCISE PRUDENT SEAMANSHIP CAUSED THE COLLISION

Inland Rule 2 is commonly referred to as the Rule of Good Seamanship, *Maritime & Mercantile International LLC v United States*, supra.

> a) Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any neglect with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case.

>    (b) In construing and complying with these Rules due regard shall be had
>    to all dangers of navigation and collision and to any special circumstances,
>    including the limitations of the vessels involved, which may make a
>    departure from these Rules necessary to avoid immediate danger.

Harnett knew that people rowed on the Harlem River. Exhibit 4, p. 12. He knew where the Columbia Crew Team's boathouse was and that the Peter J. Sharp Boathouse was located further down river. Once he saw the lights on in the Peter J. Sharp Boathouse he admitted that he had to take precautions and proceed carefully. Under these special circumstances, good seamanship, custom and practice mandate that the powerboat stay out of the way of the crew shell. In addition, good seamanship would have mandated that Harnett stop, clean his windshield and clear plastic cover or remove the clear plastic cover and proceed at a reasonable speed of 4 to 6 mph.

>    Inland Rule 5 Lookout requires that:
>
>    Every vessel shall at all times maintain a proper look-out by sight and
>    hearing as well as by all available means appropriate in the prevailing
>    circumstances and conditions so as to make appraisal of the situation and
>    of the risk of collision.

One cannot maintain an effective lookout if their windshield and clear plastic cover are so dirty that their vision is obscured. The Second Circuit has held that "It is axiomatic that an "inefficient lookout is equivalent to none". *In the Matter of Interstate Towing, Inc.,* 717 F.2d 752 ($2^d$ Cir. 1983). A windshield that is obscured due to spray or lacks windshield wipers was held to constitute a failure to maintain a lookout. *Duet v. Delta Marine Drilling Company,* 215 F.Supp. 989 (E.D. La. 1963), *Rose & Lucy Inc. v F/V Saint Anna Maria,* 252 F. Supp. 76 (D.Ma. 1966). Harnett's failure to clean the windshield and clear plastic cover or simply removing the clear plastic cover was a violation of Rule 5.

Inland Rule 6 Safe Speed requires that "Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be

-14-

stopped within a distance appropriate to the prevailing circumstances and conditions." The report of Joseph Ahlstrom, Exhibit 8, indicates that due to the pre sunrise conditions, the knowledge that there were crew shells in the area, and that the crew shells are not required to operate with lights on, are low in the water, have limited maneuverability and the rowers are facing opposite the direction of travel, a safe speed would have been between 4 to 6 mph.

Inland Rule 23(c) requires that the Harnett boat have an all around white light in addition to sidelights (red on port side, green on starboard). Both Vincent Houston and Edward Joyce testified that they did not see any lights on the Harnett boat.

## CONCLUSION

For the foregoing reasons, the petitioner's motion for summary judgment should be denied.

Respectfully submitted,

By: _____
Marc Jay Bern (MB 6608 )
Jacob Shisha (JS 5452)

Napoli, Bern, Ripka, LLP
350 Fifth Avenue, Suite 7413
New York, NY 10118

TABAK, MELLUSI & SHISHA
29 Broadway
New York, New York 10006
Phone (212) 962-1590
Fax    (212) 385-0920