Marc Jay Bern
Napoli, Bern, Ripka, LLP
350 Fifth Avenue, Suite 7413
New York, NY 10118

    and

Jacob Shisha
Tabak, Mellusi & Shisha LLP
29 Broadway, Suite 2311
New York, NY 10006

ATTORNEYS FOR NINA AND LEE RUNSDORF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

| | |
|---|---|
| In the Matter of the Complaint<br>Of ANDREW HARNETT | Docket No.: 06-cv-0699 (LMM) |
| In the Matter of Peter J.<br>Sharp Boathouse | Docket No.: 06-cv-3061 (LMM) |
| In the Matter of New York Rowing<br>Association, Inc. | Docket No.: 06-cv-3062 (LMM) |
| And a forth related case | |

----------------------------------------------------------------X

**Runsdorf Claimants in Limitation Local Civil Rule 56.1 Counter Statement of Material Facts**

Rundsdorf Claimants in Limitation ("Runsdorf") in accordance with Local Civil Rule 56.1 Respond to Petitioner Andrew Harnett's ("Harnett) Statement of Undisputed Material Facts as follows:

**Response to Harnett's Statement of Undisputed Material Facts**

1. Runsdorf admits that on or about 6:00 a.m. on October 24, 2005, there were four rowers on board a 45-footlong, coxless racing shell in the Harlem River; James H. Runsdorf, Edward Joyce, Jeff Lundwall and Vincent Houston.

2. Runsdorf admits that Runsdorf was seated in the forward most or bow seat of the rowing vessel at the time of the casualty.

3. Runsdorf admits that on October 24, 2005 the rowers did not bring a navigation light aboard the vessel with them.

4. Runsdorf admits that on October 24, 205 (sic) rower Vincent Houston looked for but did not find a navigation light at the Peter J. Sharp boathouse.

5. Runsdorf admits that the rowing shell was not equipped with a navigation light. Runsdorf further admits that the rowers who knew there was no light decided to go out on the Harlem River in the dark despite that the shell was unlit. However, there is no evidence that Runsdorf or any rowers other than Vincent Houston knew that there was no light. See Declaration of Vincent Houston Paragraph 4, Exhibit F to Declaration of Jacob Shisha.

6. Runsdorf admits that the rowers were not accompanied by an escort boat.

7. Runsdorf admits it was still dark when the rowers launched the shell in the Harlem River. However, Runsdorf admits only to the extent that it was not sun rise.

8. Runsdorf admits that the rowers traveled south in the Harlem River from the Peter J. Sharp boathouse to the area of 181st Street.

9. Runsdorf admits that by virtue of the design of rowing shells, the rowers face opposite to the direction of travel and the rowers face north while rowing south.

10. Runsdorf denies that the rowers were situated close to the middle of the Harlem River on the Manhattan side when traveling south. Deposition of Edward Joyce, Exhibit E, at p. 32 does not state this. Deposition of Vince Houston only indicates they were at the middle when they reached the 2000 meter mark, not before.

11. Runsdorf admits that at or about 6:15 a.m. the rowers turned the shell to the North and stopped.

12. Runsdorf denies that the rowers were now facing south (opposite to the direction of the travel) and remained closer to the Manhattan side of the river. The shell was closer to the Bronx side of the river. See Deposition of Jeff Lundwall, Exhibit C at p. 53; Deposition of Edward Joyce, Exhibit F, p. 43, 90; police report, Exhibit 2, page 34.

13. Runsdorf denies that the rowers were not maintaining any lookout and that the rowers did not consider that there could be other boats on the Harlem River that morning. Movant cited page 77 of Vincent Houston's deposition, Exhibit 5 for that proposition. His testimony on page 77 only states they were facing in a Southerly direction at the time and does not state that they were not maintaining a lookout or not considering the possibility of other vessels in the river. Since Runsdorf is deceased, it cannot be known what he was considering at the time of the accident.

14. Runsdorf admits that on October 24, at about 6:15 to 6:22 a.m. Petitioner's Vessel coming from the North and the unlit rowing vessel collided.

15. Runsdorf admits that civil twilight was not until 6:47 a.m. and dawn was at 7:17 a.m.

16. Runsdorf denies that it was dark at the time of the collision.

There was moonlight, it was twilight and there was a lot of ambient light from the shore and one could see 100 yards away. See Lundwall deposition p. 60, 67 & 214, Exhibit C; Joyce deposition p.69, Exhibit E.; Houston deposition p. 74, Exhibit 69 – 70,.Exhibit D.

17. Runsdorf denies that the lights on Petitioner's boat were proper and activated.

Harnett did not know if his lights were on before the collision. See deposition of Harnett at p. 77, 79, & 191, Exhibit A; deposition of Brady, p.51 & 65, Exhibit 5.

18. Runsdorf admits that petitioner operated his boat at least 16 m.p.h. against the Harlem River current.

19. Runsdorf denies that petitioner's boat's speed over ground, due to the opposing current, was between 13 and 14.25 m.p.h. The relevant speed is that through the water which is the relevant speed which would be the speed that he is closing in on the crew shell which 15 to 16 m.p.h. See report of Captain Ahlstrom, Exhibit 8.

20. Runsdorf admits that there was no speed restriction on the Harlem River where the accident occurred. However Runsdorf alleges that Inland Rule 6 provides that a vessel shall proceed at a safe speed taking into account the various factors which petitioner ignored and violated.

21. Runsdorf cannot admit or deny the petitioner made a transit of approximately 10 -13 miles in about 45 minutes before the incident and that his visibility was not impeded. Runsdorf could not know what petitioner saw or did not see since he was not on the vessel. However, testimony subsequent to the accident indicates that others who went on the vessel immediately after the accident had difficulty seeing thought the windshield of the vessel. Houston deposition, P. 84 and 130, Exhibit D, Lundwall deposition p. 206 -207, Exhibit C.

22. Runsdorf admits that petitioner transited the Hudson River from Piermont, NY to Spuyten Duyvil (approximately 10 nautical miles); contacted the bridge operator and waited for the Spuyten Duyvil swing bridge to open and then transited the bridge into the Harlem River; and navigated the upper Harlem River.

23. Runsdorf denies that petitioner operated his boat on the Manhattan (starboard) side of the Harlem River. Evidence indicates that the shell was closer to the Bronx side of the river at the time of the collision. See Lundwall deposition, p. 53, Exhibit C; Joyce deposition p. 43, 90, Exhibit E; police report, Exhibit 2,p. 34.

Dated: New York, NY
      October 18, 2011

                      NAPOLI, BERN, RIPKA, LLP
                      Marc Jay Bern,

                      and

                      TABAK, MELLUSI & SHISHA, LLP

                      By:_____
                          Jacob Shisha (JS 5452)