Lawrence B. Brennan (LB 4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

In the Matter of the Complaint of Andrew Harnett, as owner
of vessel M/V READY JET GO for Exoneration from or
Limitation of Liability.

and

In the Matter of Peter J. Sharp Boathouse, Inc., as owner
of the floating vessel constituting the boathouse, seeking
exoneration from or limitation of liability.

and

In the Matter of New York Rowing Association, Inc.,
as owner of a 2001, coxless Empacher rowing shell,
seeking exoneration from or limitation of liability.

-------------------------------------------------------------------------X

**1:06-cv-00699(LMM)(GWG)
consolidated with:
1:06-cv-03061(LMM)(GWG), and
1:06-cv-03062(LMM)(GWG)**

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE
CLAIMS FOR LOST EARNINGS AND LOST INHERITANCE
ON BEHALF OF
NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND.............................................................................................................2

LEGAL ARGUMENT ......................................................................................................................2

POINT I:     CLAIMANTS' RECOVERABLE DAMAGES, IF ANY, ARE
LIMITED TO PECUNIARY LOSS UNDER BOTH THE
GENERAL MARITIME LAW OF THE UNITED STATES AND
NEW YORK LAW.......................................................................................2

A.     Wrongful Death Damages under the General Maritime Law......................2

B.     Wrongful Death Damages under the Law of the State of New York..........4

POINT II:    CLAIMANTS WERE REQUIRED TO DISCLOSE AND
PRODUCE ALL RELEVANT FINANCIAL DOCUMENTS
UNDER THE RULES AND LAW, AND THEIR REPEATED
FAILURE TO DO SO PRECLUDES CLAIMS FOR LOST
EARNINGS AND LOST INHERITANCE ..................................................8

POINT III:   CLAIMANTS' EXPERT FAILED TO ANALYZE THE 2008
TAX RETURNS OR ANY POST-DEATH FINANCIAL
DOCUMENTATION, AND DID NOT ACCOUNT FOR
INVESTMENT INCOME THE ESTATE CONTINUES TO
RECEIVE; AS SUCH HE SHOULD BE PRECLUDED UNDER
*DAUBERT* ..............................................................................................14

CONCLUSION ...............................................................................................................................16

CERTIFICATE OF SERVICE........................................................................................................17

i

# TABLE OF AUTHORITIES

## CASES

*A.F.C. Enterprises, Inc., v. New York City School Construction Auth.,*
33 A.D.3d 737, 822 N.Y.S.2d 775 (2d Dep't 2006)...............................................................13

*Bartkowiak v. St. Adalbert's Roman Catholic Church Society,*
40 A.D.2d 306, 340 N.Y.S.2d 137 (4th Dep't 1973)................................................................8

*Bishin v. New York C. R. Co.,*
20 A.D.2d 921, 249 N.Y.S.2d 778 (2d Dep't 1964)................................................................8

*Boucher v. U.S. Suzuki Motor Corp.,*
73 F.3d 18 (2d Cir. 1996) ....................................................................................................15

*Briscoe v. United States,*
65 F.2d 404 (2d Cir 1933) ......................................................................................................8

*Calhoun v. Yamaha Motor Corp. U.S.A.,*
216 F. 3d 338 (3d Cir.), *cert. denied,* 532 U.S. 1037 (2000).....................................................4

*Chong v. New York City Transit Authority,*
83 A.D.2d 546, 441 N.Y.S.2d 24 (2d Dep't 1981)....................................................................5

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) .............................................................................................1, 14, 15, 16

*De Long v. Erie,*
60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983) .....................................................6

*Devito v. Opatich,*
215 A.D.2d 714, 627 N.Y.S.2d 441 (2d Dep't 1995)................................................................6

*Eldaghar v. City of New York Dept. of Citywide Admin. Svcs.,*
2003 WL 22455224 (S.D.N.Y. 2003) ......................................................................................9

*Farrar v. Brooklyn Union Gas Co.,*
73 N.Y.2d 802, 537 N.Y.S.2d 26, 533 N.E.2d 1055 (1988) .....................................................5

*Franchell v. Sims,*
73 A.D.2d 1, 424 N.Y. S. 2d 959 (4th Dep't 1980)..................................................................8

*Gilbert v. Stanton Brewery, Inc.,*
295 N.Y. 270, 67 N.E.2d 155 (1946) ......................................................................................6

*Goldberg v. Plaza Nursing Home Compensation, Inc.,*
222 A.D.2d 1082, 635 N.Y.S.2d 841 (4th Dep't 1995).............................................................5

*Gonzalez v. New York City Housing Authority,*
77 N.Y.2d 663, 569 N.Y.S.2d 915, 572 N.E.2d 598 (1991) ..................................................5, 6

*Guzetti v. City of New York,*
32 A.D.3d 234, 820 N.Y.S.2d 29 (1st Dep't 2006)..................................................................13

*Handwerker v. AT&T Corp.,*
211 F.R.D. 203 (S.D.N.Y. 2002)...........................................................................................11

*Handwerker v. AT&T Corp.,*
  285 F. Supp. 2d 331 (S.D.N.Y. 2002) ...................................................................................11

*Hernandez v. New York City Health & Hospital Corp.,*
  78 N.Y.2d 687, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991) ......................................................6

*In re Patton-Tully Transp. Co.,*
  797 F.2d 206 (5th Cir. 1986) ...................................................................................................3

*Ivy v. Securities Barge Lines, Inc.,*
  585 F.2d 732 (5th Cir. 1978), *cert. denied*, 446 U.S. 956 (1980) .............................................3

*J. Gerber & Co. v. S.S. Sabine Howaldt,*
  437 F.2d 580 (2d Cir. 1971) ...................................................................................................13

*Joel Paull v. Charles J. Sellers & Co., Inc.,*
  295 A.D.2d 982, 744 N.Y.S.2d 95 (4th Dep't 2002)...............................................................13

*Johnson v. Manhattan & Bronx Surface Transit Operating Auth.,*
  71 N.Y.2d 198, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988) ......................................................7

Johnson v. Manhattan & Bronx Surface Transit Operating Authority, 240 A.D.2d 635,
  659 N.Y.S.2d 97 (2d Dep't 1997) .............................................................................................6

Johnson v. Manhattan & Bronx Surface Transit Operating Authority, 71 N.Y.2d 198,
  524 N.Y.S.2d 415, 519 N.E.2d 326 (1988) ............................................................................6, 7

*Klos v. New York City Transit Authority,*
  240 A.D.2d 635, 659 N.Y.S.2d 97 (2d Dep't 1997)..................................................................7

*Langan v. St. Vincent's Hospital of New York,*
  25 A.D.3d 90, 802 N.Y.S.2d 476 (2d Dep't 2005).....................................................................5

*Liff v. Schildkrout,*
  49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980) .............................................5, 6, 7

*Lippe v. Bairnco Corp.,*
  288 B.R. 678 (S.D.N.Y. 2003) ..........................................................................................14, 15

*Long Island Railroad Co., v. The New York Central,*
  No. 25, 182 F. Supp. 100 (S.D.N.Y. 1960) .............................................................................13

*Marigliano v. New York,*
  196 A.D.2d 533, 601 N.Y.S.2d 161 (2d Dep't 1993)..................................................................7

*Moragne v. States Marine Lines, Inc.,*
  398 U.S. 375 (1970) ...........................................................................................................2, 3

*MTX Communications Co v. LDDS/Worldcom, Inc.,*
  132 F. Supp. 2d 289 (S.D.N.Y. 2001) ....................................................................................15

*Neal v. Barisich, Inc.,*
  707 F. Supp. 862 (E.D. La.), *affirmed*, 889 F.2d 273 (5th Cir. 1989)........................................3

*Nykaza v. Nathan,*
  197 A.D.2d 903, 602 N.Y.S.2d 453 (4th Dep't 1993)................................................................6

*O.F. Sherer & Sons v. Cincinnati Marine Services, Inc.,*
  279 F.2d 68 (6th Cir. 1960) ...................................................................................................13

*Parilis v. Feinstein,*
49 N.Y.2d 984, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980) ...............................................5, 6

*Records, Inc. v. Sony Music Entm't., Inc.,*
566 F. Supp. 2d 305 (S.D.N.Y. 2008) ....................................................................................10

*Sand v. Chapin,*
238 A.D.2d 862, 656 N.Y.S.2d 700 (3d Dep't 1997)........................................................5, 6, 7

*Sea-Land Service, Inc. v. Gaudet,*
414 U.S. 573 (1974) ................................................................................................................4

*Serin v. Northern Leasing Systems,*
2010 U.S. Dist. LEXIS 142713 (S.D.N.Y. 2010)......................................................................11

*Sistrunk v. Circle Bar Drilling Co.,*
770 F.2d 455 (5th Cir. 1985), *cert. denied,* 475 U.S. 1019 (1986) ...........................................3

*Smith v. Allstate Yacht Rentals, Ltd.,*
293 A.2d 805 (Del. 1972)..........................................................................................................3

*Smith v. Lehigh V. R. Co.,*
177 N.Y. 379, 69 N.E. 729 (1904) ........................................................................................5, 6

*Spiller v. Thomas M. Lowe, Jr. & Associates, Inc.,*
466 F.2d 903 (8th Cir. 1972) ....................................................................................................3

*Subsequently, in Miles v. Apex Marine Corp.,*
498 U.S. 19 (1990) ...................................................................................................................4

*Subsequently, in Norfolk Shipbuilding and Drydock Corp. v. Garris,*
532 U.S. 811 (2001) .................................................................................................................3

*The Bertha F. Walker,*
220 F. 667 (2d Cir. 1915) ........................................................................................................13

*Tidewater Marine Towing, Inc. v. Dow Chem. Co.,*
689 F.2d 1251 (5th Cir. 1982) ..................................................................................................2

*United States v. Delaware Bay and River Ass'n.,*
44 F.2d 1 (3d Cir. 1930), *cert. denied,* 283 U.S. 838 (1930)...................................................13

*Wanamaker v. Pietraszek,*
107 A.D.2d 1020, 486 N.Y.S.2d 523 (4th Dep't 1985)...............................................................8

*Yakus v. United States,*
321 U.S. 414, 64 S. Ct. 660, 88 L. Ed. 834 (1944).....................................................................9

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
516 U.S. 199 (1996) .................................................................................................................3

*Yuet Ngor Chang v. New York City Health & Hosps. Corp.,*
82 A.D.2d 764, 440 N.Y.S.2d 211 (1st Dep't 1981)..................................................................7

*Zelizo v. Ullah,*
2 A.D.3d 273, 769 N.Y.S.2d 255 (1st Dep't 2003)....................................................................7

## RULES AND REGULATIONS

Fed. R. Civ. P. 26..................................................................................................................10, 13

Fed. R. Civ. P. 26 (b)(1) ...............................................................................................................11

Fed. R. Civ. P. 26(e) .....................................................................................................................13

Fed. R. Civ. P. 37 (c) ....................................................................................................................13

Federal Rule Evidence Rule 408 .................................................................................................11

Federal Rule Evidence Rule 702 .................................................................................................14

## PRELIMINARY STATEMENT

Petitioners, New York Rowing Association ("NYRA" or "the Rowing Association") and Peter J. Sharp Boathouse ("the Boathouse") (sometimes collectively "Petitioners") respectfully submit this Reply Memorandum of Law in Further Support of their Motion *in Limine* to preclude claims for lost inheritance and lost earnings. These claims must be precluded as speculative because Claimants failed to disclose or produce relevant post-death financial information, which will prejudice Petitioners at trial. In addition, Claimants' expert Mr. Shulman should be precluded because his expert report is not sufficiently reliable according to the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Despite their claims in the opposition papers, Claimants' damages, if any, are limited to pure economic loss, which does not include grief, sorrow, mental anguish, or loss of consortium. In addition, despite disclosure obligations, discovery requests and a Court Order, Claimants failed to produce any meaningful evidence of the performance of Jim Runsdorf's business ventures and investments post death. This post-death financial information is relevant because it provides the only basis by which to account for the investment returns the estate continues to receive from investments that were passed to the estate upon Jim Runsdorf's death. Finally, by failing to disclose or produce this evidence, in violation of the Federal Rules and this Court's Orders, Mr. Shulman has been allowed to speculate without boundary or support on the lost earnings and lost inheritance claims. As a result, by failing to base his opinion on sufficient facts and data, Claimants' expert report is not sufficiently reliable under the standards set forth in *Daubert* and must be excluded.

1

## FACTUAL BACKGROUND

Petitioners respectfully refer the Court to the factual background contained in the moving Memorandum of Law, dated September 28, 2011 (S.D.N.Y. Dkt. Nos. 90, 91). To the extent that any additional factual information may be relevant, it is discussed herein.

## LEGAL ARGUMENT

**POINT I:     CLAIMANTS' RECOVERABLE DAMAGES, IF ANY, ARE LIMITED TO PECUNIARY LOSS UNDER BOTH THE GENERAL MARITIME LAW OF THE UNITED STATES AND NEW YORK LAW.**

In their Opposition to the Motion *in Limine* to preclude claims for lost earnings and lost inheritance, Claimants state that their $20 million estimate of economic pecuniary loss does not include "pain, suffering, grief, sorrow, mental anguish, loss of consortium and loss of guidance to his children." (Claimants' Mem. In Opp. to Motion *in Limine* on Damages, S.D.N.Y. Dkt. No. 115, p. 1). However, only certain losses are compensable under the applicable general maritime law of the United States and New York state law. Claimants' recovery is limited to pure economic loss, which does not include grief, sorrow, mental anguish, loss of consortium and loss of guidance to the children. Ultimately, the only recoverable damages in this wrongful death action are for loss of support, voluntary assistance, and possible inheritance, as well as medical expenses incidental to death and funeral expenses.

### A.     Wrongful Death Damages under the General Maritime Law

Subsequent to the passage of DOHSA and the Jones Act, the Supreme Court in the case of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375 (1970), followed Congress's lead and overruled *The Harrisburg.* 119 U.S. 199 (1886). *Moragne* created a wrongful death remedy under the general maritime law for deaths occurring within state territorial waters. Only the decedent's personal representative may bring suit on behalf of the beneficiaries. *Tidewater*

*Marine Towing, Inc. v. Dow Chem. Co.,* 689 F.2d 1251 (5th Cir. 1982); *Ivy v. Sec. Barge Lines, Inc.,* 585 F.2d 732 (5th Cir. 1978), *cert. denied,* 446 U.S. 956 (1980); *Neal v. Barisich, Inc.,* 707 F. Supp. 862 (E.D. La.), *affirmed,* 889 F.2d 273 (5th Cir. 1989).

Beneficiaries of a *Moragne* action include the decedent's spouse, dependent children, parents, and dependent relatives. *See, e.g., In re Patton-Tully Transp. Co.,* 797 F.2d 206 (5th Cir. 1986) (spouse); *Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455 (5th Cir. 1985) (parents), *cert. denied,* 475 U.S. 1019 (1986); *Spiller v. Thomas M. Lowe, Jr. & Assoc., Inc.,* 466 F.2d 903 (8th Cir. 1972) (dependent stepchildren); *Smith v. Allstate Yacht Rentals, Ltd.,* 293 A.2d 805 (Del. 1972) (dependent siblings).

The plaintiff in the *Moragne* case was the widow of a *Sieracki* seaman (*i.e.,* a longshoreman) who was killed on a vessel in navigable waters, and the lawsuit was based on an unseaworthiness theory as was then permitted. Subsequently, in *Norfolk Shipbuilding and Drydock Corp. v. Garris,* 532 U.S. 811 (2001) the Court extended the *Moragne* action to encompass a negligence claim based on the death of a maritime worker.  Nothing in the *Garris* decision limits its application to maritime workers, and the case thus encompasses a general maritime law wrongful death claim for any person killed in state waters.

Prior to *Garris, the* Supreme Court had held that *Moragne's* creation of a general maritime wrongful death action for deaths in state waters did not preempt state remedies in cases involving nonseafarers. In *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199 (1996) the Supreme Court held that with respect to *nonseafarers* ("Seafarers include Jones Act seamen and maritime workers covered by the LHWCA. *Calhoun,* 516 U.S. 205, n.2) the general maritime law cause of action created by *Moragne* did not supply the exclusive remedy for wrongful deaths occurring in state territorial waters. Thus, at least where a decedent's beneficiaries are not

3

provided with a preclusive wrongful death remedy by legislation, such as the Jones Act or the LHWCA, damages may be recovered under state wrongful death law. On remand, the Third Circuit held that: i) the general maritime law determined whether or not plaintiffs had a cause of action, ii) Pennsylvania law determined the measure of wrongful death damages, and iii) the law of Puerto Rico determined the right to recover punitive damages. *Calhoun v. Yamaha Motor Corp. U.S.A.,* 216 F. 3d 338 (3d Cir.), *cert. denied*, 532 U.S. 1037 (2000). The case is important where it accentuates the difference in recoverable damages under state law and the general maritime law of the United States. Here, however, under both New York law and the general maritime law of the United States, any recovery would be limited to pure economic loss.

In *Sea-Land Service, Inc. v. Gaudet,* 414 U.S. 573 (1974) the Supreme Court applied an expansive rule of damages to actions for wrongful death in state territorial waters, holding that the wife of a longshoreman whose death resulted from an accident in territorial waters could recover for loss of society. Subsequently, in *Miles v. Apex Marine Corp*., 498 U.S. 19 (1990) the Court denied recovery for loss of society, holding that the surviving (nondependent) mother of a Jones Act seaman could recover only for pecuniary loss, even though as in *Gaudet* the action was based on unseaworthiness under the general maritime law. The Court reasoned that the damages recoverable under the general maritime law could not exceed those available under the Jones Act. It did not expressly overrule *Gaudet,* however.

## B.   Wrongful Death Damages under the Law of the State of New York

Applying the Rule in *Yamaha v. Calhoun*, this court may engage in a choice of law analysis to apply state law to supplement the general maritime law of the United States. Here all the contacts are with New York exclusively – the residence and domicile of the decedent and his survivors, the residence of all of the parties, the situs of the agreements between the members and the Rowing Association, the navigation of both vessels was in New York waters, and the

4

Harlem River flows exclusively within the State of New York (but connects other bodies of water that are interstate and international in scope), the situs of the navigation, and the situs of the fatal incident. Accordingly, if the Court were to turn to the law of New York to calculate damages for wrongful death, assuming *arguendo* there were a finding of liability on a party other than Mr. Runsdorf, the result under New York law would be identical to that under the general maritime law.

The cause of action authorized by EPTL 5-4.1 through 54.5 did not exist at common law. *Gonzalez v. New York City Housing Authority*, 77 N.Y.2d 663, 569 N.Y.S.2d 915, 572 N.E.2d 598 (1991), *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980), *Langan v. St. Vincent's Hosp. of New York*, 25 A.D.3d 90, 802 N.Y.S.2d 476 (2d Dep't 2005). The damages recoverable are limited to those allowed by statute. *Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 537 N.Y.S.2d 26, 533 N.E.2d 1055 (1988), *Smith v. Lehigh V. R. Co.*, 177 N.Y. 379, 69 N.E. 729 (1904); *Parilis v. Feinstein*, 49 N.Y.2d 984, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980). The essential elements to be pleaded in a wrongful death action are: (1) a death; (2) caused by the wrongful conduct or default of defendant; (3) giving rise to a cause of action which could have been maintained, at the moment of death, by decedent if death had not ensued; (4) survival by distributees who have suffered pecuniary loss by reason of the death; and (5) appointment of a personal representative of decedent, EPTL 5-4.1. *See Chong v. New York City Transit Authority*, 83 A.D.2d 546, 441 N.Y.S.2d 24 (2d Dep't 1981); *Goldberg v. Plaza Nursing Home Comp., Inc.*, 222 A.D.2d 1082, 635 N.Y.S.2d 841 (4th Dep't 1995). It should be noted that a decedent has no cause of action to recover for his or her own death. *Sand v. Chapin*, 238 A.D.2d 862, 656 N.Y.S.2d 700 (3d Dep't 1997).

In a wrongful death action, an award of damages is limited to compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought, EPTL 5-4.3. *See Johnson v. Manhattan & Bronx Surface Transit Operating Authority*, 71 N.Y.2d 198, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988), *De Long v. Erie*, 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983), *see also Hernandez v. New York City Health & Hosp. Corp.*, 78 N.Y.2d 687, 578 N.Y.S.2d 510, 585 N.E.2d 822 (1991). Such damages include loss of support, voluntary assistance, and possible inheritance, as well as medical expenses incidental to death and funeral expenses. *Gonzalez v. New York City Housing Authority*, 77 N.Y.2d 663, 569 N.Y.S.2d 915, 572 N.E.2d 598 (1991), *Parilis v. Feinstein*, 49 N.Y.2d 984, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980), *Sand v. Chapin*, 238 A.D.2d 862, 656 N.Y.S.2d 700 (3d Dep't 1997). [The standard by which to measure the value of past and future lost earnings is the decedent's gross income at the time of death. *Johnson v. Manhattan & Bronx Surface Transit Operating Authority*, *supra*, *Klos v. New York City Transit Authority*, 240 A.D.2d 635, 659 N.Y.S.2d 97 (2d Dep't 1997), *Nykaza v. Nathan*, 197 A.D.2d 903, 602 N.Y.S.2d 453 (4th Dep't 1993).

"Pecuniary injuries" do not include sorrow or mental anguish, *Smith v. Lehigh V. R. Co.*, 177 N.Y. 379, 69 N.E. 729 (1904), or loss of companionship of a deceased child. *Gilbert v. Stanton Brewery, Inc.*, 295 N.Y. 270, 67 N.E.2d 155 (1946), *Devito v. Opatich*, 215 A.D.2d 714, 627 N.Y.S.2d 441 (2d Dep't 1995), or loss of companionship of a deceased spouse, *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980), *Sand v. Chapin*, 238 A.D.2d 862, 656 N.Y.S.2d 700 (3d Dep't 1997). Nor does recovery include the damages that decedent might have obtained in a personal injury action had decedent survived, *Parilis v. Feinstein*, 49 N.Y.2d 984, 429 N.Y.S.2d 165, 406 N.E.2d 1059 (1980). Therefore, the plaintiff in

a wrongful death action cannot seek any recovery for decedent's loss of enjoyment of life. *Sand v. Chapin, supra*.

The surviving spouse has no separate claim for loss of consortium attributable to the decedent's death. *Liff v. Schildkrout*, 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980), *see Sand v. Chapin*, 238 A.D.2d 862, 656 N.Y.S.2d 700 (3d Dep't 1997), but recovery may be obtained for loss of consortium during the period between injury and death. *Yuet Ngor Chang v. New York City Health & Hosps. Corp.*, 82 A.D.2d 764, 440 N.Y.S.2d 211 (1st Dep't 1981).

In determining what is "fair and just compensation for the pecuniary injuries resulting from the decedent's death," EPTL 5-4.3, a number of factors have been identified as appropriate for consideration. These include: the age, health and life expectancy of the decedent at the time of the injury; the decedent's work habits and present position; the decedent's future earning capacity and potential for career advancement; and the number, age, and life expectancy of the decedent's distributees, *Johnson v. Manhattan & Bronx Surface Transit Operating Auth.*, 71 N.Y.2d 198, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988).

In order to establish a right to a wrongful death recovery, the plaintiff need only show that he had a reasonable expectation of support from the decedent and therefore a pecuniary loss. *Zelizo v. Ullah*, 2 A.D.3d 273, 769 N.Y.S.2d 255 (1st Dep't 2003). Once that showing is made, the calculation of the precise amount of damages is a question for the jury. *Id.*

Generally, evidence of a decedent's gross income at the time of death is the standard with which to measure the value of income already lost and to measure the loss of future earnings. *Johnson v. Manhattan & Bronx Surface Transit Operating Auth.*, 71 N.Y.2d 198, 524 N.Y.S.2d 415, 519 N.E.2d 326 (1988), *Klos v. New York City Transit Authority*, 240 A.D.2d 635, 659 N.Y.S.2d 97 (2d Dep't 1997), *Marigliano v. New York*, 196 A.D.2d 533, 601 N.Y.S.2d 161 (2d

Dep't 1993). The jury may take into account increased earnings that decedent would have received, provided that plaintiff establishes that such increases would probably have been forthcoming. *Wanamaker v. Pietraszek*, 107 A.D.2d 1020, 486 N.Y.S.2d 523 (4th Dep't 1985).

In proving decedent's prospective earnings, evidence of what others actually earned and could earn is admissible if there is a fair basis for comparison. *Wanamaker v. Pietraszek*, 107 A.D.2d 1020, 486 N.Y.S.2d 523 (4th Dep't 1985). The court has discretion to refuse to allow an economist to testify as to the prospective loss of earnings of the deceased where the testimony is too speculative. *Franchell v. Sims*, 73 A.D.2d 1, 424 N.Y. S. 2d 959 (4th Dep't 1980), *Bartkowiak v. St. Adalbert's Roman Catholic Church Soc.*, 40 A.D.2d 306, 340 N.Y.S.2d 137 (4th Dep't 1973).

The life expectancy of the distributes is essential to the calculation. *Bishin v. New York C. R. Co.*, 20 A.D.2d 921, 249 N.Y.S.2d 778 (2d Dep't 1964), *Briscoe v. United States*, 65 F.2d 404 (2d Cir 1933).

**POINT II:   CLAIMANTS WERE REQUIRED TO DISCLOSE AND PRODUCE ALL RELEVANT FINANCIAL DOCUMENTS UNDER THE RULES AND LAW, AND THEIR REPEATED FAILURE TO DO SO PRECLUDES CLAIMS FOR LOST EARNINGS AND LOST INHERITANCE**

In their opposition papers, Claimants state that the financial documentation from 2005 to 2010 was not produced because the "entire claim is based upon the fact that Mr. Runsdorf had the ability to generate funds based on his personal services, therefore, tax returns or tax related documents after 2005 are not relevant." (Claimants' Mem. in Opp. to Petitioners' *In Limine* Motion on Damages, S.D.N.Y. Dkt. No. 115, p. 4-5). However, by not disclosing or producing any of these tax returns and related documentation, Claimants have been allowed to "cherry pick" the support for their damages calculation and have placed their inflated estimate at over $20 million. These post-death financial documents are discoverable and relevant; they are

8

evidence of how the investments that passed to the estate upon Jim Runsdorf's death performed after his death. The documents provide proof – perhaps the best evidence – of how the more than $20 million in claimed damages should be calculated based on the income the estate continues to receive from these inherited investments.

In addition, this is the first time that Claimants have made the assertion that the post-death financial documents are not relevant. As this argument was not made during the course of discovery and Claimants should be precluded from making it now when discovery has closed. *See*, *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944)("No procedural principle is more familiar to this court than that a ... right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before the tribunal having jurisdiction to determine it."), *Eldaghar v. City of New York Dept. of Citywide Admin. Svcs.*, 2003 WL 22455224, *1 (S.D.N.Y. 2003)(failure to assert objections to a discovery request in a timely manner operates as a waiver). Further, claimants produced tax returns for 2008. They should not now be allowed to say that the 2008 tax returns were relevant, while returns in other years are not relevant.

Claimants further argue that they were never required specifically to produce the damages documents at issue. Claimants disingenuously argue that "[t]his Court, however, did not make a list of specific documents, which Claimants must produce" and note that under New York law sanctions are not appropriate when there is ambiguity in court orders. (Claimants' Mem. in Opp. to Petitioners' *In Limine* Motion on Damages, S.D.N.Y. Dkt. No. 115, p. 2). It is disingenuous for Claimants to argue that just because the specific documents were not outlined in a court order, that they should not have been produced. Both the Federal Rules of Civil

9

Procedure and the Orders in place expressly mandated Claimants to produce ***all*** financial documentation impacting their claimed damages.

The Federal Rules of Civil Procedure are clear – all relevant documents that support a claim must be disclosed or produced, without need for a formal request, court order, or other demand. *Fed. R. Civ. P., Rule* 26(a)(ii)-(iii). More specifically, under Rule 26 (a)(1)(i)-(iii) parties must disclose all documents and information that support claims or defenses, ***including a damages computation and supporting evidence***, which includes materials bearing on the nature and extent of injuries suffered. Rule 26 of the Federal Rules of Civil Procedure sets forth:

> [A] party must, without awaiting a discovery request, provide to the other parties:
>
> (ii) a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses …;
>
> (iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; …

Fed. R. Civ. Pro. 26 (a)(1)(A)(ii),(iii).

According to the advisory committee that proposed the original initial disclosure requirements, this provision is "the functional equivalent of a standing Request for Production under Rule 34." Moore's Federal Civil Practice, § 26.22. As a result, failure to provide damage computation documents may result in exclusion of damage calculation evidence or expert testimony regarding damage calculations at trial. *Id.*, *see also*, *24/7 Records, Inc. v. Sony Music Entm't., Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008)(failure to make mandatory initial disclosure of damages theory documentation and computation deprived defendants of a

10

meaningful opportunity to conduct discovery into the damages theory; preclusion was automatic as the non-disclosure was neither substantially justified nor harmless). Ultimately, the disclosures required under the Federal Rules of Civil Procedure are not "meaningless rituals". *Serin v. Northern Leasing Sys.*, 2010 U.S. Dist. LEXIS 142713, \*3-\*4 (S.D.N.Y. 2010).

Moreover, relevance is not the only standard for discoverability. Under Rule 26 (b)(1) of the Federal Rules of Civil Procedure, claimants were obligated to disclose the post-death financial documents because the documents were reasonably calculated to lead to the discovery of admissible evidence. *See, Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209-210 (S.D.N.Y. 2002) (outstanding discovery in one discrete area encompassed potential evidence that may have been relevant to damages claims, was therefore material, and may have led to admissible evidence that was relevant to mitigation of damages and other issues), *Handwerker v. AT&T Corp.*, 285 F. Supp. 2d 331, 332-333 (S.D.N.Y. 2002)(applicable standard is whether or not the matter is relevant and appears reasonably likely to lead to the discovery of admissible evidence; plaintiff's repeated failure to comply with Court Orders allowed her to unilaterally impose limits on the proper bounds of discovery). Claimants misstate the test for disclosure and discovery – they cannot be the sold arbiter of relevance or disclosure.

Subsequent to the initial discovery demands, and in order to save cost and effort, the parties agreed to allow Claimants to "re-produce" without Federal Rule Evidence Rule 408 protections, the financial documentation that had previously been disclosed for the purposes of mediation in 2008 for use in the litigation. That documentation covered the period from 1999 to 2006 (although a very limited number of 2006 documentation was included). As outlined in Petitioners' Memorandum of Law in Support of the Motion *in Limine* to Preclude Claims for Lost Earnings and Lost Inheritance (S.D.N.Y. Dkt. No. 85, pp. 9-10), after a significant delay in

the "deemed" production of those document without settlement protections, Petitioners wrote to the Court on May 27, 2011 requesting that Claimants be compelled to produce post-death financial documentation. (Letter Request of May 27, 2011, Exhibit M of Brennan Affidavit, S.D.N.Y. Dkt. No. 84). As a result of that application, the parties appeared before the court on February 4, 2011. During the conference, this Court issued an order that specifically directed Claimants to "produce all expert reports not later than March 18, 2011, and all documents that will be referred to in any expert report not later than February 18, 2011". (Court Order, Exhibit L of Brennan Affidavit, S.D.N.Y. Dkt. No. 84). Again, because of the significant claims for lost inheritance and lost income, and their repeated requests for post-death financial documentation, Petitioners anticipated that any disclosure or production would include documentation of financial damages, including tax returns filed after 2005.

Claimants subsequently produced their financial expert's report on March 18, 2011 but without any supporting documentation. In response, Petitioners made a further request for post-incident financial documentation. (Letter Request of April 29, 2011, Exhibit M of Brennan Affidavit, S.D.N.Y. Dkt. No. 84). Ultimately, while Claimants finally responded with a limited number of financial documents, most - with the limited exception of the 2008 tax returns - was duplicative of their production in 2008 for the mediation. Nonetheless, this was *the first* production of financial documents for use in the litigation since the matter incepted in 2006.

What is more, Claimants' expert Mr. Shulman apparently never reviewed the sole post-death financial documentation that was produced, the 2008 tax return, nor did he analyze it in his report or subsequent affidavit attached to Claimants Opposition to this motion. As a result, for Claimants to now argue that such documentation is not relevant is an attempt to avoid a sanction

for their failure to produce this documentation which is crucial to Petitioners' understanding the damages at issue.

Ultimately, the failure to produce witnesses and documents within its custody and control also gives rise to an adverse inference. The non-production of material evidence which is in the control of a party raises an inference that such evidence is unfavorable to that party. *J. Gerber & Co. v. S.S. Sabine Howaldt,* 437 F.2d 580, 593 (2d Cir. 1971); *United States v. Delaware Bay and River Ass'n.,* 44 F.2d 1, 4 (3d Cir. 1930), *cert. denied,* 283 U.S. 838 (1930); *The Motor Launch No. 12,* 65 F. Supp. 252, 253 (E.D.Pa.1946). Even if the Court had not issued the discovery order dated February 4, 2011, Claimants were required nonetheless, under Rule 26(e) to supplement their discovery responses with meaningful, post-2005 financial information. Fed.R.Civ.P. 26(e). Under Rule 37 (c) of the Federal Rules of Civil Procedure, Claimants were required to produce the supplemental documentation and could face sanctions for failing to do so. Fed.R.Civ.P. 37(c). Ultimately, the Court is well within its power to order that Claimants' evidence would not have carried their burden to prove damages, but also that the failure to produce such evidence should be lead to an adverse inference as to Claimants' interests. *The Bertha F. Walker, 220 F. 667* (2d Cir. 1915); *O.F. Sherer & Sons v. Cincinnati Marine Services, Inc.,* 279 F.2d 68, 74 (6th Cir. 1960)*; c.f. Long Island R.R. Co., v. The New York Central No. 25,* 182 F. Supp. 100, 103-04 (S.D.N.Y. 1960).

Finally, the New York state cases cited by Claimants in their Opposition Memorandum are inapposite; the Federal Rules of Civil Procedure are applicable in this matter not New York state law. Claimants cite *Joel Paull v. Charles J. Sellers & Co., Inc.*, 295 A.D.2d 982, 744 N.Y.S.2d 95 (4th Dep't 2002), *A.F.C. Enterprises, Inc., v. New York City School Constr. Auth.*, 33 A.D.3d 737, 822 N.Y.S.2d 775 (2d Dep't 2006), and *Guzetti v. City of New York*, 32 A.D.3d

234, 820 N.Y.S.2d 29 (1st Dep't 2006) for the general premise that sanctions are not appropriate under state law when there is "substantial" compliance with certain discovery orders and requests.  Again, those cases do not apply in this matter where the Federal Rules of Civil Procedure control.

Claimants' failure to disclose or produce financial documentation post-death of the return on Jim Runsdorf's investments which passed to the estate, has allowed Claimants to create an inflated estimate of lost earnings and lost inheritance.  Not producing post-death documents – with the sole exception of the 2008 tax returns, which were not reviewed or analyzed by Claimants' financial expert Mr. Shulman – has allowed Claimants to invoke a damages estimate that in no way accounts for the income that Claimants continues to receive from these investments.  Ultimately, none of the parties to this matter have been able to fully analyze the damages claims and as such, Claimants should be precluded from these claims.

**POINT III:  CLAIMANTS' EXPERT FAILED TO ANALYZE THE 2008 TAX RETURNS OR ANY POST-DEATH FINANCIAL DOCUMENTATION, AND DID NOT ACCOUNT FOR INVESTMENT INCOME THE ESTATE CONTINUES TO RECEIVE; AS SUCH HE SHOULD BE PRECLUDED UNDER *DAUBERT***

Rule 702 of the Federal Rules of Evidence which sets forth the admissibility requirements for expert testimony. (Claimants' Mem. in Opp. to Petitioners' *In Limine* Motion on Damages, S.D.N.Y. Dkt. No. 115, p. 5).  These include that the testimony be based on 1) sufficient facts or data, 2) be the product of "reliable principles and methods", and 3) that the witness must have applied the principles and methods reliably to the facts of the case.  *Id.*, *see also*, Fed.R.Ev. 702, *see also*, *Lippe v. Bairnco Corp.*, 288 B.R. 678, 685 (S.D.N.Y. 2003).  Mr. Shulman's report and expected testimony will not be based on sufficient "facts or data"; he did not review any tax documentation post-death, and therefore failed to consider or account for the

14

income the estate continues to earn.  As a result, Mr. Shulman has not met the requirements set forth in either part "1" or part "3" of Rule 702.  Ultimately, because he has not reviewed the appropriate documentation, his "principals and methods" are also inadequate.  Claimants have failed to establish that Mr. Shulman's report and testimony are reliable. *Lippe,* 288 B.R. at 685 (citations omitted).

Claimants attempt to justify Mr. Shulman's analysis by noting that he used reliable methods including the "U.S. Department of Labor Bureau of Labor Statistics, Consumer Price Index, and life expectance tables" among others.  However, simply relying on tables, without the relevant factual information, cannot lend credibility to this report.  Mr. Shulman has not made any mention of the 2008 tax returns that were produced.  His damages estimate does not include a calculation for the returns on investments that Claimants' continue to receive over time from Jim Runsdorf's investments (which constitute almost the entire basis for his inflated $20.6 million lost income claim).  He has not noted that the Runsdof estate continues to receive certain funds from these investments.

"[E]xpert testimony should be excluded if it is 'speculative or conjectural,' or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith,' or to be in essence an apples and oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.* 73 F.3d 18, 21 (2d Cir. 1996). Expert testimony that is nothing "'more than subjective belief or unsupported speculation must be excluded." *MTX Communications Co v. LDDS/Worldcom, Inc.* 132 F. Supp. 2d 289, 291 (S.D.N.Y. 2001) (quoting *Daubert*); *see also Boucher,* 73 F.3d at 21.  Ultimately, in addition to preclusion of such claims for violation of the Federal Rules and this Court's order, Mr. Shulman's speculative claims about lost earnings and lost inheritance are not based upon "sufficient facts or data" and therefore must be precluded under *Daubert*.

## **CONCLUSION**

Claimants should be should be precluded from making any claims for lost inheritance or lost earnings because they disregarded their disclosure and discovery obligations, the Federal Rules of Civil Procedure and this Court's Order when they failed to disclose or produce meaningful evidence of Jim Runsdorf's investments and ventures post death. Further, claims for lost income and lost inheritance are speculative and not based on sufficient evidence and should be precluded under *Daubert*.

Dated:     New York, New York
           November 22, 2011

Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: Lawrence B. Brennan

Lawrence B. Brennan (LB4078)
*Attorneys for New York Rowing Association, Inc.*
and *Peter J. Sharp Boathouse, Inc.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

Of Counsel:

Lawrence B. Brennan (LB 4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)

## CERTIFICATE OF SERVICE

I, Brooke Travis, hereby certify that I electronically filed the attached Reply Memorandum of Law in further support of the Motion *in Limine* on Damages behalf of Peter Jay Sharp Boathouse, Inc. and New York Rowing Association, Inc., with the Clerk of the Court using the CM/ECF system which will send notification of such filing electronically to the following:

Marc Jay Bern, Esq.
Marina Zapantis, Esq.
Napoli Bern Ripka Shkolnik LLP
*Attorneys for the Runsdorf Claimants*
350 5th Ave., Ste. 7413
New York, New York  10118

James E. Mercante, Esq.
Michael Evan Stern, Esq.
Rubin, Fiorella & Friedman, LLP.
*Attorneys for Mr. Andrew Harnett*
292 Madison Avenue, 11th Fl.
New York, New York  10017

Jacob Shisha, Esq.
Tabak, Mellusi & Shisha
*Attorneys for the Runsdorf Claimants*
29 Broadway
New York, New York  10006

/s/  Brooke Travis