Lawrence B. Brennan (LB 4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.
150 East 42nd Street
New York, New York 10017
(212) 490-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Complaint of Andrew Harnett, as owner
of vessel M/V READY JET GO for Exoneration from or
Limitation of Liability.

<table>
<tr><td>and</td><td><b>1:06-cv-00699(LMM)(GWG)</b></td></tr>
</table>

and             **1:06-cv-00699(LMM)(GWG)**
**consolidated with:**

In the Matter of Peter J. Sharp Boathouse, Inc., as owner    **1:06-cv-03061(LMM)(GWG), and**
of the floating vessel constituting the boathouse, seeking     **1:06-cv-03062(LMM)(GWG)**
exoneration from or limitation of liability.

and

In the Matter of New York Rowing Association, Inc.,
as owner of a 2001, coxless Empacher rowing shell,
seeking exoneration from or limitation of liability.

------------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES
# ON BEHALF OF
# NEW YORK ROWING ASSOCIATION, INC. and
# <u>PETER J. SHARP BOATHOUSE, INC.</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................................1

FACTUAL BACKGROUND.............................................................................................................1

LEGAL ARGUMENT ......................................................................................................................1

POINT I.      CLAIMANTS' OPPOSITION PAPERS ARE DEFICIENT AS A
              MATTER OF LAW.....................................................................................................1

    A.     Burden of Proof on Motion For Summary Judgment...........................................2

    B.     Service and Form of Affidavits; Other Forms of Evidence.................................4

POINT II.     CLAIMANTS' RECOVERABLE DAMAGES, IF ANY, ARE
              LIMITED TO PECUNIARY LOSS UNDER BOTH THE
              GENERAL MARITIME LAW OF THE UNITED STATES AND
              NEW YORK LAW......................................................................................................7

POINT III.    CLAIMANTS' LOST INCOME CLAIMS ARE NOT
              COMPENSIBLE BECAUSE THEY ARE TOO SPECULATIVE
              AND REPRESENT RETURNS ON INVESTED CAPITAL.....................7

POINT IV.     EVEN IF THE LOST INCOME CLAIMS WERE
              COMPENSIBLE, CLAIMANTS HAVE NOT ACCOUNTED
              FOR INCOME THEY CONTINUE TO RECEIVE, THEREFORE
              THE CLAIMS SHOULD BE PRECLUDED ..........................................13

CONCLUSION ...............................................................................................................................15

CERTIFICATE OF SERVICE .......................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................................................................2, 3

*Applegate v. Top Associates, Inc.,*
425 F.2d 92 (2d Cir. 1970) .............................................................................................................3

*BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.,*
77 F.3d 603 (2d Cir. 1996) .............................................................................................................5

*Beyah v. Coughlin,*
789 F.2d 986 (2d Cir. 1986) .......................................................................................................4, 5

*Brink v. Union Carbide Corp.,*
41 F. Supp. 2d 402 (S.D.N.Y. 1997) ..............................................................................................6

*Bruchman v. Standard Chartered Bank, PLC,*
997 F. Supp. 481 (S.D.N.Y. 1998) ..................................................................................................4

*Cinema North Corp. v. Plaza at Latham Associates,*
867 F.2d 135 (2d Cir. 1989) ...........................................................................................................3

*Datskow v. Teledyne Continental Motors Aircraft Prods., Division of Teledyne
Industries, Inc.,*
807 F. Supp. 941 (W.D.N.Y. 1992) .................................................................................................8

*De Loraine v. MEBA Pension Trust,*
355 F. Supp. 89 (S.D.N.Y. 1973), judgment affirmed, 499 F.2d 49 (2d Cir. 1974) .................3

*Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,*
902 F.2d 174 (2d Cir. 1990) ...........................................................................................................3

*Douglas v. Victor Capital Group,*
21 F. Supp. 2d 379 (S.D.N.Y. 1998) ...............................................................................................4

*Dutchess/Putnam Restaurant v. Putnam County Department of Health,*
178 F. Supp. 2d 396 (S.D.N.Y. 2001) .............................................................................................5

*Elliott Associates, L.P. v. Hayes,*
141 F. Supp. 2d 344, 404 (S.D.N.Y. 2000), *judgment affirmed,*
26 Fed. *Appx.* 83 (2d Cir. 2002) ...................................................................................................5

*Estate of Detwiler v. Offenbecher,*
728 F .Supp. 103 (S.D.N.Y. 1989) ..................................................................................................4

*Estate of Detwiler v. Offenbecher,*
728 F. Supp. 103 (S.D.N.Y. 1989) ..................................................................................................5

*Expoconsul Intern., Inc. v. A/E Systems, Inc.,*
*755 F. Supp.* 1237 (S.D.N.Y. 1991) ...............................................................................................3

*Farrar v. Brooklyn Union Gas Co.,*
73 N.Y.2d 802 (1988).......................................................................................................................8

*Ferrarelli v. United States,*
1992 U.S. Dist. LEXIS 22702 (E.D.N.Y. 1992) .............................................................................8

*Fitzgerald v. Henderson,*
251 F.3d 345 (2d Cir. 2001) ...................................................................................................3

*Flair Broadcasting Corp. v. Powers,*
733 F. Supp. 179 (S.D.N.Y. 1990) ......................................................................................3, 6

*Galasso v. Eisman, Zucker, Klein & Ruttenberg,*
310 F. Supp. 2d 569 (S.D N.Y. 2004) ...................................................................................5

*Gallimore-Wright v. Long Island R. Co.,*
354 F. Supp. 2d 478 (S.D.N.Y. 2005) ...................................................................................6

*Gombert v. New York C. & H. Railroad Co.,*
195 N.Y. 273 (1909)..........................................................................................................9, 10

*Gray v. Town of Darien,*
927 F.2d 69 (2d Cir. 1991) ...................................................................................................3

*Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York,*
86 F.2d 38 (2d Cir. 1989) .....................................................................................................2

*H. Sand & Co., Inc. v. Airtemp Corp.,*
934 F.2d 450, 454-55, 14 U.C.C. Rep. Serv. 2d (CBC) 1111 (2d Cir. 1991) ..............................4

*Harlem Associates v. Inc. Vill. of Mineola,*
273 F.3d 494 (2d Cir. 2001) .................................................................................................1

*Holland Industries, Inc. v. Adamar of New Jersey, Inc.,*
550 F. Supp. 646 (S.D.N.Y. 1982) ........................................................................................5

*Holland Industries, Inc. v. Adamar of New Jersey, Inc.,*
550 F. Supp. 646 (SD NY 1982) ...........................................................................................4

*Hollander v. American Cyanamid Co.,*
172 F.3d 192 (2d Cir 1999) ...............................................................................................4, 5

*Hollander v. American Cyanamid Co.,*
172 F3d 192 (2d Cir 1999) ...................................................................................................6

*In re Harnett,*
2010 U.S. Dist. LEXIS 84851 (S.D.N.Y. July 14, 2010).........................................................2

*In re Joint E. and S. District Asbestos Litigation,*
756 F. Supp. 794 (S.D.N.Y. 1991), *rev'd on other grounds*, 964 F.2d 92 (2d Cir.
1992)....................................................................................................................................2

*In re Ionosphere Clubs, Inc.,*
147 *B. R.* 855 (Bankr. S.D.N.Y. 1992)...................................................................................5

*Jeffreys v. City of New York,*
426 F.3d 549 (2d Cir. 2005) .................................................................................................3

*Jewell-Rung Agency, Inc. v. Haddad Organization, Ltd.,*
814 F .Supp. 337 (S.D.N.Y. 1993) .....................................................................................5, 6

*John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co. Ltd.,*
147 F.R.D. 40 (S.D.N.Y. 1993)...........................................................................................3, 6

*Kaiak v. City of New York,*
88 F.3d 63 (2d Cir. 1996) .....................................................................................................5

iii

*Konstantatos v. County of Suffolk,*
    174 A.D.2d 653, 571 N.Y.S.2d 514 (2d Dep't 1991)..................................................................10

*Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.,*
    844 F.2d 955 (2d Cir. 1988) ........................................................................................................3

*Lotte Trading (N.Y.), Inc. v. Oh,*
    1989 W.L. 1303 at *1 (S.D.N.Y., Jan 4, 1989) ........................................................................2, 3

*Machline v. National Helicopter Corp. of American,* 1997 U.S. Dist. LEXIS 20547
    (S.D.N.Y. 1997).......................................................................................................................8, 10

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ..................................................................................................................2, 3

*Mycak v. Honeywell, Inc.,*
    953 F.2d 798 (2d Cir. 1992) ........................................................................................................2

*Naantaanbuu v. Abernathy,*
    816 F. Supp. 218 (S.D.N.Y. 1993) ..............................................................................................4

*New York Ex Rel. Spitzer v. Saint Francis Hospital,*
    94 F. Supp. 2d 423 (S.D.N.Y. 2000) ........................................................................................4, 6

*Nobel Ins. Co. v. Hudson Iron Works, Inc.,*
    111 F. Supp. 2d 373 (S.D.N.Y. 2000) ........................................................................................5

*Nykaza v. Nathan,*
    197 A.D.2d 903, 602 N.Y.S.2d 453 (4th Dep't 1993)................................................................10

*Parks v. Lebhar-Friedman, Inc.,*
    2008 WL 3833802 *5 (S.D.N.Y. 2009) .....................................................................................6, 7

*Rogow v. United States,*
    173 F. Supp. 547 (S.D.N.Y. 1959) ..............................................................................................8

*Santos v. Murdock,*
    243 F.3d 681 (2d Cir. 2001) ........................................................................................................5

*Schonfeld v. Hilliard,*
    218 F.3d 164 (2d Cir. 2000) ........................................................................................................8

*Searles v. First Fortis Life Ins. Co.,*
    98 F. Supp. 2d 456 (S.D.N.Y. 2000) ...........................................................................................6

*Stringile v. Rothman,*
    142 A.D.2d 637 (2d Dep't 1988)..................................................................................................8

*Thomas v. Stone Container Corp.,*
    922 F. Supp. 950 (S.D.N.Y. 1996) ..............................................................................................5

*United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,*
    44 F.3d 1082 (2d Cir. 1995) ........................................................................................................6

*Wahad v. F.B.I.,*
    179 F.R.D. 429 (S.D.N.Y. 1998)...............................................................................................4, 5

*Williams Dental Co., Inc. v. Air Exp. Intern.,*
    824 F. Supp. 435 (S.D.N.Y. 1993), *affirmed without opinion,* 17 F.3d 392 (2d Cir.
    1993)..............................................................................................................................................2

*Williams v. McAllister Bros. Inc.,*
   534 F.2d 19 (2d Cir. 1976) .......................................................................................................2

*Zenith Radio Corp. v. Hazeltine Research,*
   401 U.S. 321 (1971) ...............................................................................................................8

## STATUTES

31 U.S.C. §911(d)(2)(A) .......................................................................................................11, 12

31 U.S.C. §1402(a) .....................................................................................................................11

## RULES AND REGULATIONS

Local Civil Rule 56.1................................................................................................................6, 7, 8

Local Civil Rule 56.1(c) ..................................................................................................................6

Fed. R. Civ. P. 56(c) .......................................................................................................................2

Fed. R. Civ. P. 56(e) ...................................................................................................................4, 5

## PRELIMINARY STATEMENT

Petitioners, New York Rowing Association, Inc. ("NYRA" or "the Rowing Association") and Peter J. Sharp Boathouse, Inc. ("the Boathouse") respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Partial Summary Judgment on Damages.

Even when the financial evidence is viewed in favor of the non-movant Claimants, there is no genuine issue as to any material fact. Claimants have failed to present proof to support their speculative damages claim of $20,444,229. Instead, all admissible, non-speculative evidence shows that Jim Runsdorf earned an average of $88,128 per year in fees, which are the only compensable damages in this wrongful death action. The Rowing Association and the Boathouse are entitled to partial summary judgment limiting the damages claim to the amount of fees earned by Jim Runsdorf.

## FACTUAL BACKGROUND

The Rowing Association and the Boathouse respectfully refer the Court to the factual background contained in Petitioners' Memorandum of Law, dated September 28, 2011 (S.D.N.Y. Dkt. No. 117). To the extent that any additional factual information may be relevant, it is discussed in the following legal points.

## LEGAL ARGUMENT

## POINT I.    CLAIMANTS' OPPOSITION PAPERS ARE DEFICIENT AS A MATTER OF LAW

A motion for summary judgment may be granted only where, as here, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Harlem Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 498-99 (2d Cir. 2001),

(*quoting* Fed. R. Civ. P. 56(c)) (other citations omitted), *and see*, *In re Harnett*, 2010 U.S. Dist. LEXIS 84851 (S.D.N.Y. July 14, 2010).

## A.    Burden of Proof on Motion For Summary Judgment

Once the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to establish the existence of a genuine factual dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986); *Greater Buffalo Press, Inc. v. Fed. Reserve Bank of New York*, 86 F.2d 38 (2d Cir. 1989); *Lotte Trading (N.Y.), Inc. v. Oh*, 1989 W.L. 1303 at *1 (S.D.N.Y., Jan 4, 1989). To demonstrate that there is a genuine issue of material fact, a party must show that there exists more than a metaphysical doubt as to the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Joint E. and S. Dist. Asbestos Litig.*, 756 F. Supp. 794 (S.D.N.Y. 1991), *rev'd on other grounds*, 964 F.2d 92 (2d Cir. 1992).

In opposing summary judgment, a party may not rest on unsupported allegations or denials, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986); *Mycak v. Honeywell, Inc.*, 953 F.2d 798 (2d Cir. 1992); *Williams v. McAllister Bros. Inc.*, 534 F.2d 19 (2d Cir. 1976) or simply claim without support that evidence adduced by the movant in support of the motion is not credible. *Williams Dental Co., Inc. v. Air Exp. Intern.*, 824 F. Supp. 435, 438 (S.D.N.Y. 1993), *affirmed without opinion*, 17 F.3d 392 (2d Cir. 1993).

Moreover, the non-moving party, here Claimants, cannot satisfy their  burden of proof by producing only a scintilla of evidence to support its position, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251(1986) or by  presenting the court with only legal

arguments *Applegate v. Top Associates, Inc.*, 425 F.2d 92 (2d Cir. 1970); *Flair Broadcasting Corp. v. Powers*, 733 F. Supp. 179 (S.D.N.Y. 1990); *De Loraine v. MEBA Pension Trust*, 355 F. Supp. 89 (S.D.N.Y. 1973), *judgment vacated on other grounds*, *judgment affirmed,* 499 F.2d 49 (2d Cir. 1974) or conclusory allegations *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174 (2d Cir. 1990); *John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co. Ltd.*, 147 F.R.D. 40 (S.D.N.Y. 1993). In addition, the party opposing summary judgment cannot base its opposition on a theoretical possibility that evidence to support its position may become available in the future. *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001); *Expoconsul Intern., Inc. v. A/E Systems, Inc.*, *755 F. Supp. 1237* (S.D.N.Y. 1991); see also *Gray v. Town of Darien,* 927 F.2d 69 (2d Cir. 1991) (party opposing summary judgment may not rely on its pleadings, on conclusory factual allegations or on conjecture as to facts that discovery may disclose). Rather, the non-moving party must present affirmative, factual evidence that, if believed by the trier of fact, would support a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251, *Matsushita Elec. Indus. Co., Ltd.* 475 U.S. at 585; *Cinema North Corp. v. Plaza at Latham Associates,* 867 F.2d 135 (2d Cir. 1989); *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.,* 844 F.2d 955 (2d Cir. 1988); *Lotte Trading (N.Y.), Inc. v. Oh*, 1989 WL 1303 (S.D.N.Y., Jan 4, 1989).

If the factual context of a case renders the non-moving party's position implausible, the non-moving party must come forward with more persuasive evidence to support its position than would otherwise be required. *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587; *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005) (non-moving party's testimony so "replete with

3

inconsistencies and improbabilities" that no reasonable jury would undertake the suspension of disbelief necessary to credit the allegations made in his complaint); *Estate of Detwiler v. Offenbecher*, 728 F .Supp. 103, 136 (S.D.N.Y. 1989).

## B.      Service and Form of Affidavits; Other Forms of Evidence

An affidavit submitted in support of or opposition to a motion for summary judgment must be signed and notarized. The court will not consider an affidavit that is submitted without the requisite signature or notarization. *Naantaanbuu v. Abernathy*, 816 F. Supp. 218 (S.D.N.Y. 1993); see also *Beyah v. Coughlin*, 789 F.2d 986 (2d Cir. 1986) (defendant submitted affidavit of attorney in support of motion for summary judgment, to which were attached letters signed by persons other than affiant; court would not consider affidavit or attachments in ruling on motion; affidavit was not based on personal knowledge and even if letters were signed by persons with personal knowledge of matters referred to in letters, they were not notarized).

Affidavits must be made on personal knowledge and may include only facts that would be admissible in evidence. Fed. R. Civ. P. 56(e); *Hollander v. American Cyanamid Co*., 172 F.3d 192, 198 (2d Cir 1999); *H. Sand & Co., Inc. v. Airtemp Corp*., 934 F.2d 450, 454-55, 14 U.C.C. Rep. Serv. 2d (CBC) 1111 (2d Cir. 1991) (hearsay testimony that would be inadmissible at trial "may not properly be set forth in a Rule 56(e) affidavit"); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.,* 550 F. Supp. 646 (SD NY 1982); *Bruchman v. Standard Chartered Bank, PLC,* 997 F. Supp. 481, 487 (S.D.N.Y. 1998)(striking portions of affidavits not based on personal knowledge and containing inadmissible hearsay); *Wahad v. F.B.I*., 179 F.R.D. 429, 435 (S.D.N.Y. 1998); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 391-92 (S.D.N.Y. 1998) (rejecting inadmissible hearsay documents); *New York Ex Rel. Spitzer v. Saint Francis Hosp.,* 94

4

F. Supp. 2d 423, 425 (S.D.N.Y. 2000); *Dutchess/Putnam Restaurant v. Putnam County Dep't of Health,* 178 F. Supp. 2d 396, 411 (S.D.N.Y. 2001) (hearsay and conclusions disregarded) and must affirmatively show that the affiant is competent to testify on the matters set forth in the affidavit. Fed. R. Civ. P. 56(e); *Hollander v. American Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir 1999); *Santos v. Murdock,* 243 F.3d 681, 683 (2d Cir. 2001); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.,* 550 F. Supp. 646 (S.D.N.Y. 1982); *Thomas v. Stone Container Corp.,* 922 F. Supp. 950, 956 (S.D.N.Y. 1996); *Wahad v. F.B.I.,* 179 F.R.D. 429, 435 (S.D.N.Y. 1998); *Nobel Ins. Co. v. Hudson Iron Works, Inc.,* 111 F. Supp. 2d 373, 375 (S.D.N.Y. 2000) [Affidavit by one lacking personal knowledge insufficient as a matter of law].

In ruling on a motion for summary judgment, the court will not consider an affidavit containing only self-serving and conclusory statements. *Jewell-Rung Agency, Inc. v. Haddad Organization, Ltd.,* 814 F. Supp. 337 (S.D.N.Y. 1993); *In re Ionosphere Clubs, Inc.,* 147 B. R. 855 (Bankr. S.D.N.Y. 1992); *Kaiak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996) [expert's affidavits insufficient to raise issue of fact]; *Elliott Associates, L.P. v. Hayes,* 141 F. Supp. 2d 344, 404 (S.D.N.Y. 2000), *judgment affirmed,* 26 Fed. *Appx.* 83 (2d Cir. 2002).Ultimate or conclusory facts and conclusions of law also cannot be used on summary judgment motion. *BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn.,* 77 F.3d 603, 615 (2d Cir. 1996); *Wahad v. F.B.I.,* 179 F.R.D. 429, 435 (S.D.N.Y. 1998).   Similarly, an affidavit containing only the unsupported legal arguments of a party's attorney cannot be used to establish the existence of a genuine factual dispute. *Beyah v. Coughlin,* 789 F.2d 986 (2d Cir. 1986); *Galasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F. Supp. 2d 569 (S.D N.Y. 2004); *Estate of Detwiler v. Offenbecher,* 728 F. Supp. 103 (S.D.N.Y. 1989).

The affidavit of Mr. Shulman submitted in opposition to the motions must be stricken because it contains matters clearly beyond his personal knowledge including inadmissible hearsay. When, as here, statements in an affidavit are not based on personal knowledge, the opposing party may move to strike the statements. *Hollander v. American Cyanamid Co.*, 172 F3d 192, 198 (2d Cir 1999); *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995); *Jewell-Rung Agency, Inc. v. Haddad Organization, Ltd.*, 814 F .Supp. 337 (S.D. N.Y. 1993); *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000). The court may strike the offending portions of the affidavit *Flair Broadcasting Corp. v. Powers*, 733 F. Supp. 179 (S.D.N.Y. 1990) ; *Brink v. Union Carbide Corp.*, 41 F. Supp. 2d 402, 403 (S.D.N.Y. 1997) (conclusions and hearsay stricken); *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) or may strike the entire affidavit, *John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co. Ltd.*, 147 F.R.D. 40 (S.D.N.Y. 1993). Here, the hearsay statements proffered by Claimants are inconsistent with the requirements of Rule 56(e) and prejudice the non-moving party. *Parks v. Lebhar-Friedman, Inc.*, 2008 WL 3833802 (S.D.N.Y. 2008). Claimants, if they wished, need only have obtained a proper affidavit from the witnesses or produced them for deposition and cross-examination under oath. They failed to do either.

## C.    Statement of Material Facts (Local Civil Rule 56.1)

Any statement of fact contained in a Rule 56.1 statement will be deemed admitted for purposes of the motion unless it is specifically controverted in a correspondingly numbered paragraph by the opposing party. Local Civil Rule 56.1(c), *Gallimore-Wright v. Long Island R. Co.*, 354 F. Supp. 2d 478 (S.D.N.Y. 2005) (Kaplan, J.). It is not

6

sufficient to deny sufficient information to form a belief with respect to a statement contained in the moving party's Rule 56.1 statement. *Parks v. Lebhar-Friedman, Inc.*, 2008 WL 3833802 *5 (S.D.N.Y. 2009) (Pogue, J.).

Accordingly, Claimants have expressly or implicitly admitted the bulk of the admissions suggested by Petitioners in their Request to Admit and in their Rule 56.1 Statement. In other words, Claimants admitted the facts in paragraphs 1-37 of the Petitioners' Rule 56.1 statement when they elected not to respond to those items. Moreover, Claimants expressly and unilaterally deferred their Rule 56.1 Counterstatement to the filing of their final opposition papers. The combined admitted facts are set forth in a consolidated statement of agreed and admitted facts accompanying these reply papers.

**POINT II.   CLAIMANTS' RECOVERABLE DAMAGES, IF ANY, ARE LIMITED TO PECUNIARY LOSS UNDER BOTH THE GENERAL MARITIME LAW OF THE UNITED STATES AND NEW YORK LAW.**

*See* POINT I of Petitioners' Reply Memorandum of Law in Further Support of the Motion *in Limine* to Preclude Claims for Lost Earnings and Lost Inheritance, a copy of which is annexed to this motion.

**POINT III.   CLAIMANTS' LOST INCOME CLAIMS ARE NOT COMPENSIBLE BECAUSE THEY ARE TOO SPECULATIVE AND REPRESENT RETURNS ON INVESTED CAPITAL**

Claimants contend in their opposition papers that the Court should accept their speculative, inflated and unsupported estimates for lost future earnings. First, they argue that certain cash distributions and investment income from the prior five years should be used as a baseline for determining lost future earnings. However, these claims are too speculative to be compensable under applicable law. Moreover, these funds were not reported as revenue to the

IRS.  Further, they argue that returns on invested capital should be compensable.  However, the law prohibits these returns on capital from being compensable in a wrongful death action.

Claimants have conceded that Jim H. Runsdorf was involved in an industry where his returns were highly speculative.  In fact, in their Rule 56.1 counterstatement, Claimants specifically admit:

> Mr. Cohen's summary indicates that any business deals Jim Runsdorf was involved in were tentative, and subject to market conditions and other factors which were beyond the control of the business partnerships and ventures of which Jim Runsdorf was a part.  (Exhibit K).  *Admit.*

(Claimants' Rule 54.1 Counterstatement of Material Facts, S.D.N.Y. Dkt. No. 120, ¶40).

As outlined in Petitioners' initial motions, damages that are too speculative are not compensable under either the general maritime law of the United States or under New York law. *See Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 339 (1971); *Ferrarelli v. United States*, 1992 U.S. Dist. LEXIS 22702, *47 (E.D.N.Y. 1992).  As such, it is well-established that damages for wrongful death are not recoverable when they are based on contingencies which are "uncertain, dependent on future changeable events and, thus, inherently speculative."  *See Datskow v. Teledyne Continental Motors Aircraft Prods., Div. of Teledyne Indus., Inc.*, 807 F. Supp. 941, 946 (W.D.N.Y. 1992); *citing Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 804 (1988), *Schonfeld v. Hilliard*, 218 F.3d 164, 173 (2d Cir. 2000), *Machline v. National Helicopter Corp. of Am.*, 1997 U.S. Dist. LEXIS 20547, *23-24 (S.D.N.Y. 1997), *Rogow v. United States*, 173 F. Supp. 547 (S.D.N.Y. 1959), *Stringile v. Rothman*, 142 A.D.2d 637 (2d Dep't 1988).

Claimants state, without any support, that Jim Runsdorf would have continued to earn money regardless of market conditions, and conclude that "there was a reasonable degree of certainty that he would continue to be able to provide for his family in a manner consistent with

prior history from new ventures." (Claimants' Memo. in Opp. to Motion for Partial Summary Judgment on Damages, S.D.N.Y. Dkt. No. 117, p. 13).

Claimants legally and factually unsupportable conclusion suggests that Jim Runsdorf would have continued to earn money without suffering any of the ramifications of the financial downturn starting in 2008, Claimants have not and cannot meet their burden to prove these speculative damages. Real estate values are driven by, among other things, access to capital. After 2008, much of that capital for investment had dried up and resulted in deflated real estate values, making it significantly more difficult to get loans for purchase of real estate. (See Reply Affidavit of Lawrence B. Brennan, Exhibit R, Chalfin Report, pages 4-5; Exhibit S, Johnson Report, p. 4). As a result, not only is his work too speculative for compensation, but the claim that he would not have suffered any of the consequences of the 2008 downturn further evidence of the speculative nature of the claims. While Jim Runsdorf did have an ability to generate income, the ability to do so was based on too many contingencies to be compensable under applicable law. Simply stated, the types of business deals in which Jim Runsdorf engaged were simply too dependent on financial and real estate market conditions in violent flux to be compensable in this wrongful death action.

Additionally, any money Jim Runsdorf did receive from these investments was based primarily on returns of invested capital. More specifically, Jim Runsdorf was compensated with a share of the investments. While he may or may not have been offered the actual cash fee for his services, Jim Runsdorf was compensated with shares or an interest in those financial vehicles. As such, any income earned from his decision to re-invest his interest in those financial vehicles, is also not recoverable under applicable law and Claimants have not met their burden to prove otherwise. *Gombert v. New York C. & H. R.R. Co.*, 195 N.Y. 273, 281-281 (1909).

Claimants simply failed to prove that Jim Runsdof's earnings were the result of his personal efforts and the "predominant factor in producing the business' profits, such as in the case of a lawyer, doctor or midwife." *Machine v. National Helicopter Corp. of Am.,* 1997 U.S. Dist. LEXIS 20547, *20 (S.D.N.Y. 1997), *Konstantatos v. County of Suffolk,* 174 A.D.2d 653, 571 N.Y.S.2d 514 (2d Dep't 1991), *Nykaza v. Nathan*, 197 A.D.2d 903, 602 N.Y.S.2d 453 (4th Dep't 1993).  In fact, while Jim Runsdorf may have played a role in bringing investors together, it cannot be said that his ability to do so was the "predominant" factor in producing the business profits.  Instead, the predominant factor in producing the profits was the investment and return on income.  His involvement and organizational skills did not predominate over a "small and purely incidental investment of capital" and Claimants have not proved otherwise.  *Gombert, supra*, 195 N.Y. at 279-280.  Instead, it was the large capital investment, in which Jim Runsdorf also became invested, that ultimately generated any returns.

Further evidence of the more complex and highly leveraged nature of his real estate investment deals, is found in the fact that Jim Runsdorf's ability to generate fees in the future is mostly based on his reinvestment of his shares in these deals back into the deals themselves. (Claimants' Memo. in Opp. to Motion for Partial Summary Judgment on Damages, Shulman Affidavit, S.D.N.Y. Dkt. No. 117, ¶ 14).  In fact, Mr. Shulman's report indicates that certain of these investments were based on non-compensable loans that Jim Runsdorf paid back over time if the investment was successful.  "Mr. Turner lent him the funds in this manner so that Mr. Runsdorf would not have a preferential position in the capital put up by others. When the project paid off in the future, it would be deducted from his share to cover his proportional share of required capital so that his payoff would not be proportionally greater than the other partners." (Claimants' Memo. in Opp. to Motion for Partial Summary Judgment on Damages, Shulman

10

Affidavit, S.D.N.Y. Dkt. No. 117, ¶20(b)). Jim Runsdorf did not receive the income outright, instead he would take an investment interest. As such, the returns his estate has received are based on a return of invested income, which is not compensable under applicable law.

Finally, we note that in the years for which tax returns were provided, Jim Runsdorf reported the return from these investments "investment income". It was not classified as a taxable income under the U.S. Tax code and it was not taxed at the marginal 35% tax rate. Instead, it was classified as investment income, which could be reinvested and deferred for tax purposes and is taxed at the preferred rate of 15%.

Generally, the U.S. tax code includes two kinds of earned income: 1) wages, salaries, or professional fees and other amounts received as compensation for personal services actually performed (31 U.S.C. § 911(d)(2)(A)) including the fair market value of compensation paid with property (IRS Reg. § 1.911-3(b)(1)), and 2) net earnings from self-employment defined as gross income derived by an individual from any trade or business less deductions allowed by the Internal Revenue Code attributed to that trade or business (31 U.S.C. § 1402(a)). This second type of income which could be reported on schedule C of an individual income tax return or on a schedule K-1 for a partnership, limited liability company or S corporation. The K-1 form would include an entry for net earnings from self-employment if the K-1 income was earned income and not investment income. There was no self-employment income reported on any form provided. In both cases, the income is subject to Social Security and Medicare withholding tax. In the case of self-employment income, the individual is subject to both the employee and employer portion of the Social Security and Medicare withholding tax.

Earned income does not include that part of the compensation received by the taxpayer for personal services performed by him for a corporation which represents a distribution of

earnings or profits rather than a reasonable allowance as compensation for the personal services actually performed [31 U.S.C. § 911(d)(2)(A)].   There are cases where the Internal Revenue Services has disallowed a deduction for salary because the amount was deemed excessive and not appropriate for the level of services performed.

Ultimately, Jim Runsdorf was paid a fee for his service in organizing these investment opportunities.  While no documentation has been provided on the value of the fee he received, Jim Runsdorf chose to reinvest the "fee" into the initial investment and was compensated with returns on that investment.  He was able to "purchase" the interest outright at the same value as an outside investor would have.  Like any other investment, that decision to invest may or may not have been successful.  Ultimately, the Claimaints have far overstated the loss as they have included the returns over time as the income, not the initial fee.  The returns are investment returns, measured by the risk, rather than any actual service provided.  Ultimately, by only including an analysis of the investment returns, Claimants have been allowed to far overstate the actual loss.

According to Jim Runsdorf's tax returns for the limited years in which returns were provided, Jim Runsdorf reported the following income:

|  | Earned | Unearned | Total |
|---|---|---|---|
| 2000 Tax Return | 53,963 | 635,741 | 689,704 |
| 2001 Tax Return | 57,048 | 19,338 | 76,386 |
| 2002 Tax Return | 50,066 | (185) | 49,881 |
| 2003 Tax Return | 177,532 | 125,430 | 302,962 |
| 2004 Tax Return | 72,281 | 1,093,382 | 1,165,663 |
| 2005 Tax Return | 7,200 | 169,899 | 177,099 |

The Earned Income column above includes W-2 earnings and the earnings reported on Schedule C.  Not including 2005, the year that he died, Jim Runsdorf reported an average of $82,178 per year in earned income.  All other income was reported on his tax returns as

"unearned", which includes investment income from interest, dividends, gains/losses of the sale of investment assets, and income generated from investment entities. As such, it is duplicitous for Claimants to now argue that these funds were in fact income, when they were treated as investment income on all contemporaneous tax documentation that they provided to date.

**POINT IV.     EVEN IF THE LOST INCOME CLAIMS WERE COMPENSIBLE, CLAIMANTS HAVE NOT ACCOUNTED FOR INCOME THEY CONTINUE TO RECEIVE, THEREFORE THE CLAIMS SHOULD BE PRECLUDED**

Even if the Rundorf Claimants had met their burden to prove that the speculative future income and investment income were compensable, they have failed to include in their calculations any credit for the earnings Claimants continue to receive from the investments that were passed to the estate. In fact, the majority of the $770,000 per year estimate of lost future earnings is based on investments in the Washburn Wires and CTC Investments financial vehicles. As noted in our prior motion and in Runsdorf's own tax returns, Jim Runsdorf's share in those investments passed to the estate upon his death and Claimants continue to earn fees from them. Mr. Shulman's estimate of lost future earnings does not take into account that these investments will continue to accrue to the estate. Instead, he uses them in his $770,000 per year projection but does not discount for the continued returns that these investments may provide.

The 2008 tax returns, the sole year for which tax returns were provided post-death, show that Nina Runsdorf received a return on those investments. However, this is only one year. Because of Claimants' failure to comply with their disclosure and discovery obligations and this Court's explicit Order, Petitioners cannot calculate or project the actual damages because tax returns in other years post-death were not produced. Accordingly, Claimants have presented a grand projection of lost future income, without accounting for the income that the estate continues to earn from these investments. Ultimately, there is no factual issue, Claimants have

failed to support the inflated damages claim of over $20,000,000, and should be precluded from making it.

Further, Claimants have also failed to consider the contributions that have been made to these investment vehicles. Claimants repeatedly cite to the fact that "three out of the five years had distributions in excess of $1,200,000" in the years prior to Jim Runsdorf's death. (Claimants' Memo. in Opp. to Motion for Partial Summary Judgment on Damages, Shulman Affidavit, S.D.N.Y. Dkt. No. 117, ¶ 21). Not surprisingly, neither Claimants nor their financial expert Mr. Shulman ever mentioned the contributions that were paid into these investments in certain years. Again, Claimants' damages claims are simply unsupported by the record, and they have failed to meet their burden to prove that these damages are compensable under applicable law.

## CONCLUSION

Even when the financial evidence is viewed in favor of the non-movant Claimants, there is no genuine issue as to any material fact. Claimants have failed to present adequate proof to support their speculative damages claim of $20,444,229. Instead, all admissible, non-speculative evidence available in this matter shows that Jim Runsdorf earned and reported an average of $88,128 per year, which are the only compensable damages in this wrongful death action.

Dated:     New York, New York
           November 22, 2011

Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: _____
Lawrence B. Brennan (LB4078)
*Attorneys for Peter J. Sharp Boathouse, Inc.* and
*New York Rowing Association, Inc.*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

Of Counsel:

Lawrence B. Brennan (LB4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)

## CERTIFICATE OF SERVICE

I, Brooke Travis, hereby certify that I electronically filed the attached Reply Memorandum of Law in Further Support of the Motion for Partial Summary Judgment on Damages on behalf of Peter Jay Sharp Boathouse, Inc. and New York Rowing Association, Inc., with the Clerk of the Court using the CM/ECF system which will send notification of such filing electronically to the following:

Marc Jay Bern, Esq.
Marina Zapantis, Esq.
Napoli Bern Ripka Shkolnik, LLP
*Attorneys for the Runsdorf Claimants*
350 5th Ave., Ste. 7413
New York, New York   10118

James E. Mercante, Esq.
Michael Evan Stern, Esq.
Rubin, Fiorella & Friedman, LLP.
*Attorneys for Mr. Andrew Harnett*
292 Madison Avenue, 11th Fl.
New York, New York   10017

Jacob Shisha, Esq.
Tabak, Mellusi & Shisha
*Attorneys for the Runsdorf Claimants*
29 Broadway
New York, New York   10006

/s/  Brooke Travis