Lawrence B. Brennan (LB 4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for NEW YORK ROWING ASSOCIATION, INC. and
PETER J. SHARP BOATHOUSE, INC.
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

In the Matter of the Complaint of Andrew Harnett, as owner
of vessel M/V READY JET GO for Exoneration from or
Limitation of Liability.

and

In the Matter of Peter J. Sharp Boathouse, Inc., as owner
of the floating vessel constituting the boathouse, seeking
exoneration from or limitation of liability.

and

In the Matter of New York Rowing Association, Inc.,
as owner of a 2001, coxless Empacher rowing shell,
seeking exoneration from or limitation of liability.

------------------------------------------------------------------------X

1:06-cv-00699(LMM)(GWG)
consolidated with:
1:06-cv-03061(LMM)(GWG), and
1:06-cv-03062(LMM)(GWG)

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# MOTION FOR PARTIAL SUMMARY JUDGMENT
# ON BEHALF OF
# NEW YORK ROWING ASSOCIATION, INC. and
# PETER J. SHARP BOATHOUSE, INC.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND .................................................................................................3

LEGAL ARGUMENT ............................................................................................................4

      POINT I.    CLAIMANTS' OPPOSITION PAPERS ARE INADAQUATE AS A MATTER OF FACT AND LAW ...................................................................4

            A.    Burden of Proof on Motion For Summary Judgment .....................4

            B.    Claimants Failed to Meet Their Burden to Avoid Summary Judgment ........................................................................................6

      POINT II:    CLAIMANTS FAILED TO ESTABLISH THAT THE ROWING ASSOCIATION AND BOATHOUSE ARE LIABLE FOR FAILURE TO MAKE AVAILABLE LIGHTS ..........................................7

      POINT III:    CLAIMANTS CANNOT PROVE THAT THE BOATHOUSE AND THE ROWING ASSOCIATION WERE NEGLIGENT FOR FAILING TO ADVISE THE ROWERS OF THE REQUIREMENT OF USING LIGHTS .......................................................9

      POINT IV:    CLAIMANTS CANNOT PROVE THAT THE BOATHOUSE AND THE ROWING ASSOCIATION ARE LIABLE FOR ANY FAILURE TO MAKE AVAILABLE OR POST RULES .......................11

CONCLUSION ....................................................................................................................15

CERTIFICATE OF SERVICE .............................................................................................16

# TABLE OF AUTHORITIES

## CASES

*American Smelting and Refining Co. v. SS Irish Spruce,*
548 F.2d 56 (2d Cir.), *cert. denied,* 431 U.S. 955 (1977)..................................................3, 9, 10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..........................................................................................................4, 5

*Applegate v. Top Associates, Inc.,*
425 F.2d 92 (2d Cir. 1970) ....................................................................................................5

*Bombard v. Central Hudson Gas and Electric Co.,*
205 A.D.2d 1018, 614 N.Y.S.2d 577 (3d Dep't 1994) ......................................................11

*Brown v. New York Medical College for Comprehensive Health Practice,*
162 A.D.2d 139, 556 N.Y.S.2d 84 (1st Dep't 1990)...........................................................12

*Cinema North Corp. v. Plaza at Latham Associates,*
867 F.2d 135 (2d Cir. 1989) ..................................................................................................5

*De Loraine v. MEBA Pension Trust,*
355 F. Supp. 89 (S.D.N.Y. 1973), judgment affirmed, 499 F.2d 49 (2d Cir. 1974) ...................5

*Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,*
902 F.2d 174 (2d Cir. 1990) ..................................................................................................5

*Estate of Detwiler v. Offenbecher,*
728 F .Supp. 103 (S.D.N.Y. 1989) ........................................................................................6

*Expoconsul Intern., Inc. v. A/E Systems, Inc.,*
755 F. Supp. 1237 (S.D.N.Y. 1991).......................................................................................5

*Fitzgerald v. Henderson,*
251 F.3d 345 (2d Cir. 2001) ..................................................................................................5

*Flair Broadcasting Corp. v. Powers,*
733 F. Supp. 179 (S.D.N.Y. 1990) ........................................................................................5

*Gray v. Town of Darien,*
927 F.2d 69 (2d Cir. 1991) ....................................................................................................5

*Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York,*
86 F.2d 38 (2d Cir. 1989) ......................................................................................................4

*In re Joint E. and S. District Asbestos Litigation,*
756 F. Supp. 794 (S.D.N.Y. 1991), *rev'd on other grounds,* 964 F.2d 92 (2d Cir. 1992).........................................................................................................................................4

*Jeffreys v. City of New York,*
426 F.3d 549 (2d Cir. 2005) ..................................................................................................6

*John Hancock Property and Casualty Ins. Co. v. Universale Reinsurance Co. Ltd.,*
147 F.R.D. 40 (S.D.N.Y. 1993)..............................................................................................5

*Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.,*
844 F.2d 955 (2d Cir. 1988) ..................................................................................................5

*Lotte Trading (N.Y.), Inc. v. Oh*,
   1989 W.L. 1303 at *1 (S.D.N.Y., Jan 4, 1989) ......................................................... 4, 6

*Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................................................4, 5, 6

*Mycak v. Honeywell, Inc.*,
   953 F.2d 798 (2d Cir. 1992) ............................................................................................4

*O'Neill v. United States*,
   927 F. Supp. 599 (E.D.N.Y. 1996) ................................................................................11

*Powers v. Montgomery Ward & Co.*, 251 A.D. 120, 295 N.Y.S. 712 (4th Dep't),
   *affirmed*, 276 N.Y. 600, 12 N.E.2d 595 (1937) ............................................................12

*Williams Dental Co., Inc. v. Air Exp. Intern.*,
   824 F. Supp. 435 (S.D.N.Y. 1993), *affirmed without opinion*, 17 F.3d 392 (2d Cir.
   1993) ................................................................................................................................4

*Williams v. McAllister Bros. Inc.*,
   534 F.2d 19 (2d Cir. 1976) ..............................................................................................4

*Zaffiris v. O'Loughlin*,
   184 A.D.2d 696, 585 N.Y.S.2d 94 (2d Dep't 1992) .....................................................11

## STATUTES

33 U.S.C. §§2001-38 ..........................................................................................................13
33 U.S.C. §2025(d) ..............................................................................................................7

## OTHER LEGAL AUTHORITIES

Healy & Sweeney, The Law of Marine Collision (1998)..................................................2

## PRELIMINARY STATEMENT

Petitioners, NEW York Rowing Association, Inc. ("NYRA" or "the Rowing Association") and Peter J. Sharp Boathouse, Inc. ("the Boathouse") (sometimes collectively "Petitioners") respectfully submit this Reply Memorandum of Law in further support of their motion for partial Summary Judgment.

Throughout the litigation the parties have proceeded on the allegations in Claimants' pleadings and theories advanced during disclosure and discovery. The main contention advanced by Claimants was that the Rowing Association and, somehow also the Boathouse, were legally liable for Mr. Runsdorf's death because they failed to make available lights for the rowing shell or to ensure that the shell had proper lights when he operated it on the morning of October 24, 2005. The rules of the Rowing Association, U.S. Rowing, and the custom and practice placed the primary responsibility upon the rowers to make available their own lights for the shells on the rare occasions when they rowed prior to sunrise or after sunset. (Tom Curry Deposition dated October 14, 2010, p. 7.)[1] It was not until the exchange of experts' reports, following the conclusion of fact discovery, that Claimants abandoned all claims concerning allegations of liability against the Rowing Association and Boathouse that the alleged failure to make available lights for the shell (which is vigorously denied) caused or contributed to Mr. Runsdorf's death as the result of the collision between Mr. Harnett's boat and the unlighted shell on the Harlem River.

Claimants present Janus-like arguments on lights and causation. On one hand they seek to recover from NYRA and the Boathouse for failing to make available more lights; on the other hand, they attempt to escape fault in their claim against Harnett, the other vessel owner.

---

[1] Portion of the deposition of Thomas Curry, dated October 14, 2010 were submitted in support of Claimants' opposition papers. Hereinafter referred to as Curry depo. dated Oct. 14, 2010 with reference to the specific pages.

1

Claimants' expert, Captain Ahlstrom, conceded that the absence of lights on the shell operated by Jim Runsdorf did not cause the fatal collision. (Captain Ahlstrom's Expert Report dated March 14, 2011 at p. 3.)[2] Such inconsistent and duplicitous arguments cannot stand. The claims against the Boathouse and Rowing Association should be dismissed as a matter of law.

Claimants' expert recognized the clear lack of factual and legal support for Claimants' claims, and accordingly Captain Ahlstrom conceded that the rowers' failure to use a light was not a cause of the collision; the rowers were well aware of the statutory requirement to have lights but instead, inexplicably chose to proceed on the dark river prior to sunrise without a light, in clear violation of long-standing Federal law designed to enhance safety at sea. Since Claimants now have abandoned these allegations and theories of fault against the Rowing Association and the Boathouse, the Court must dismiss those claims, as a matter of law.[3]

Claimants disingenuously attempted to shift the responsibility for providing lights from the rowers to NYRA and the Boathouse, and despite law, rules, and customary and practice to the contrary, attempted to impose a duty upon NYRA and the Boathouse to re-educate the rowers regarding the statutory requirement for lights – the undisputed evidence clearly establishes this safety statutory requirement was previously within the knowledge of the rowers who routinely, but not consistently, rowed with lights prior to sunrise. The fact that the rowers used lights prior to sunrise on multiple earlier occasions during the weeks and months prior to this collision

---

[2] Captain Ahlstrom's Expert Report dated March 14, 2011 hereinafter referred to as "Ahlstrom Report" with reference to the appropriate pages.

[3] The Rowing Association and the Boathouse continually maintained that failure of the rowers to have a light during the dark hours, well prior to sunrise on the morning of the incident, was a major (if not sole) cause of the fatal event. Harnett has moved for summary judgment for a second time soundly resting his argument on the conceded failure of the Runsdorf shell to display the statutorily-required navigation light, among other statutory faults. Harnett correctly notes that as between the vessels the Rule of the *Pennsylvania* places a heavy, if not insurmountable burden, on Claimants to show that the absence of lights on the Runsdorf shell did not – but could not – have caused the collision. [See Healy & Sweeney, *The Law of Marine Collision*, (1998) Ch. 12 discussing concepts of factual determination of culpable conduct in both-to-blame collisions.]

2

conclusively establishes that they knew of the legal requirement for lights prior to sunrise. Moreover, it is clear that there is no legal duty to make available repetitive warnings or instruction where a party knows or has access to the requirements or warnings but elects or refuses to implement them. *American Smelting and Refining Co. v. SS Irish Spruce*, 548 F.2d 56, 60 (2d Cir.), *cert. denied*, 431 U.S. 955 (1977).

Most important, Claimants' Memorandum in Opposition to Peter Jay Sharp Boathouse, Inc. and New York Rowing Association, Inc. Motion for Partial Summary Judgment Memorandum[4] clearly establishes that no negligence can be cast on NYRA or the Boathouse. More specifically, Claimants cannot prove their alleged claims against NYRA and the Boathouse for i) permitted the use of the shell during dark; ii) failed to equip the rowing shell with lights; and iii) failing to have proper training and supervisions of persons using the boat house to make sure that they were aware of and followed the required safety practices. (Exhibit C, ¶ 29, 33, 34, 35, 50, 53, 54, 55). Since Claimants cannot establish that there is any evidence to support their claims for negligence with respect to lights against NYRA and the Boathouse, those claims must be dismissed as a matter of law.

## FACTUAL BACKGROUND

The Rowing Association and the Boathouse respectfully refer the Court to the factual statement contained in our Memorandum of Law in Support of Motion for Partial Summary Judgment, dated September 28, 2011 (docket no. 97)[5]. To the extent that any additional factual

---

[4] References to Claimants' Memorandum in Opposition to Peter Jay Sharp Boathouse, Inc. and New York Rowing Association, Inc. Motion for Partial Summary Judgment hereinafter referred to as "Cl. Mem. in Opp. to Motion for Partial SJ" with reference to the appropriate pages.

[5] References to Petitioners' Memorandum in Support of Motion for Partial Summary Judgment hereinafter referred to as "Pet. Mem. in Supp. of Motion for Partial SJ" with reference to the appropriate pages.

information may be relevant, it is discussed in the legal points herein and in the accompanying consolidated statement of agreed and admitted facts.

## LEGAL ARGUMENT

POINT I.  CLAIMANTS' OPPOSITION PAPERS ARE INADAQUATE AS A MATTER OF FACT AND LAW

### A. Burden of Proof on Motion For Summary Judgment

Once the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to establish the existence of a genuine factual dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986); *Greater Buffalo Press, Inc. v. Fed. Reserve Bank of New York*, 86 F.2d 38 (2d Cir. 1989); *Lotte Trading (N.Y.), Inc. v. Oh*, 1989 W.L. 1303 at *1 (S.D.N.Y., Jan 4, 1989). To demonstrate that there is a genuine issue of material fact, a party must show that there exists more than a metaphysical doubt as to the facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Joint E. and S. Dist. Asbestos Litig.*, 756 F. Supp. 794 (S.D.N.Y. 1991), *rev'd on other grounds*, 964 F.2d 92 (2d Cir. 1992).

In opposing summary judgment, a party may not rest on unsupported allegations or denials, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986); *Mycak v. Honeywell, Inc.*, 953 F.2d 798 (2d Cir. 1992); *Williams v. McAllister Bros. Inc.*, 534 F.2d 19 (2d Cir. 1976) or simply claim without support that evidence adduced by the movant in support of the motion is not credible. *Williams Dental Co., Inc. v. Air Exp. Intern.*, 824 F. Supp. 435, 438 (S.D.N.Y. 1993), *affirmed without opinion*, 17 F.3d 392 (2d Cir. 1993).

Moreover, the non-moving party, here Claimants, cannot satisfy their burden of proof by producing only a scintilla of evidence to support its position, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251(1986) or by presenting the court with only legal arguments *Applegate v. Top Associates, Inc.*, 425 F.2d 92 (2d Cir. 1970); *Flair Broadcasting Corp. v. Powers*, 733 F. Supp. 179 (S.D.N.Y. 1990); *De Loraine v. MEBA Pension Trust*, 355 F. Supp. 89 (S.D.N.Y. 1973), *judgment vacated on other grounds, judgment affirmed,* 499 F.2d 49 (2d Cir. 1974) or conclusory allegations *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174 (2d Cir. 1990); *John Hancock Property and Cas. Ins. Co. v. Universale Reinsurance Co. Ltd.*, 147 F.R.D. 40 (S.D.N.Y. 1993). In addition, the party opposing summary judgment cannot base its opposition on a theoretical possibility that evidence to support its position may become available in the future. *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001); *Expoconsul Intern., Inc. v. A/E Systems, Inc.*, 755 F. Supp. 1237 (S.D.N.Y. 1991); see also *Gray v. Town of Darien*, 927 F.2d 69 (2d Cir. 1991) (party opposing summary judgment may not rely on its pleadings, on conclusory factual allegations or on conjecture as to facts that discovery may disclose). Rather, the non-moving party must present affirmative, factual evidence that, if believed by the trier of fact, would support a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251, *Matsushita Elec. Indus. Co., Ltd.* 475 U.S. at 585; *Cinema North Corp. v. Plaza at Latham Associates*, 867 F.2d 135 (2d Cir. 1989); *Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.*, 844 F.2d 955 (2d Cir. 1988); *Lotte Trading (N.Y.), Inc. v. Oh*, 1989 WL 1303 (S.D.N.Y., Jan 4, 1989).

If the factual context of a case renders the non-moving party's position implausible, the non-moving party must come forward with more persuasive evidence to support its position than would otherwise be required. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) (non-moving party's testimony so "replete with inconsistencies and improbabilities" that no reasonable jury would undertake the suspension of disbelief necessary to credit the allegations made in his complaint); *Estate of Detwiler v. Offenbecher*, 728 F .Supp. 103, 136 (S.D.N.Y. 1989).

### B. Claimants Failed to Meet Their Burden to Avoid Summary Judgment

Claimants' expert, Captain Ahlstrom, clearly opined that any failure to use a light *would not* have caused the collision. Stated differently, he believes that lights would not have made a difference. It is clear that Claimants are unable to satisfy their burden and establish the causal link necessary to support their claims against NYRA and the Boathouse. Claimants now attempt to avoid partial summary judgment by contending, contrary to fact and law, that the Rowing Association and the Boathouse were negligent for: i) not supplying red and green running lights, ii) not advising the master rowers that running lights must be used, and iii) not providing or posting the rules nor enforcing the rules. Claimants' arguments as set forth in their opposition memorandum, however, failed to meet their burden of proof required to avoid summary judgment.

As explained in Petitioners main moving memorandum (Point II), Claimants, through their expert Captain Ahlstrom, conceded that there can be no question of fact regarding failure to use of lights. In their response, Claimants have made it obvious that they are unable to meet their burden. There is a clear absence of evidence to support their claims for fault regarding lights against the Boathouse and the Rowing Association. All evidence put forth by Claimants in

their opposition brief clearly establishes that there is no question of fact that NYRA and the Boathouse cannot be held liable for failure to make available lights or instruct the rowers regarding use of lights. To the contrary, the evidence put forth by Claimants makes clear that NYRA and the Boathouse did in fact make available lights, and further, that the rowers were aware of the need to use lights and previously had done so on many occasions.

**POINT II:   CLAIMANTS FAILED TO ESTABLISH THAT THE ROWING ASSOCIATION AND BOATHOUSE ARE LIABLE FOR FAILURE TO MAKE AVAILABLE LIGHTS**

Claimants recognize that "The Boathouse and NYRA seek partial summary judgment arguing that since Runsdorf's maritime expert, Captain Ahlstrom, opined that the crew shell's failure to comply with 33 U.S.C. Section 2025(d) 'Inland Rule 25', lights for sailing vessels and vessels under oars, could not have been a cause of the accident, the Boathouse and NYRA cannot be held liable for failure to make available lights." (Cl. Mem. in Opp. to Motion for Partial SJ p. 7). In response, however, Claimants failed to satisfy their burden to establish why this Court should not grant the Petitioners' Motion for Partial Summary Judgment.

Death Claimants own expert, Captain Ahlstrom, concludes that any failure by the rowers to display lights was *not* causative in the collision which occurred on the morning of October 24, 2005 between the rowing shell and READY JET GO well prior to sunset on the Harlem River. Assuming, *arguendo*, NYRA and the Boathouse's failure to make available lights was a fault, such fault could not cast them in liability based upon Claimants' own theory of the case. Thus, accepting Captain Ahlstrom's conclusions the Death Claimants cannot, as a matter of law, prove that NYRA and the Boathouse were negligent for failing to make available lights.

Notwithstanding Captain Ahlstrom's clear admission that lights would not have made a difference on the morning of the collision (Ahlstrom Report p. 3), the factual evidence and arguments presented in Claimants' opposition clearly support NYRA and the Boathouse's position that there are no genuine questions of fact - the Boathouse and NYRA cannot be held liable for failing to make available lights or to re-educate the experienced and knowledgeable Master Rowers. Specifically, Claimants clearly admit that the Boathouse and NYRA did in fact purchase and make available running lights. (Cl. Mem. in Opp. to Motion for Partial SJ p. 8 fn.3) ("It is clear that when the rules referred to lights they refer to the running lights, not flashlights. As shown in Exhibit 9 the lights that were purchased by the boathouse were running lights not flashlights."). Further, Claimants other expert, Ms. Metcalf, specifically refers to the number of lights ordered and supplied by NYRA, further proving that NYRA and the Boathouse supplied lights. ("Exhibits 46 and 47 of Tom Curry's deposition indicate that a total of four sets of running lights and (four red and green and four white stern lights) were purchased more than a year prior.") (Cl. Mem. in Opp. to Motion for Partial SJ p. 10 and Exhibit I. p 5)[6] Thus, it is clear that Claimants are well aware that NYRA and the Boathouse supplied the necessary running lights required under Inland Rule 25. Further and discussed in greater detail below, the rowers admitted that they knew lights were available at the Boathouse and had repeatedly used lights from the Boathouse on previous occasions. As such, since it is clear that NYRA and the Boathouse make available the necessary running lights, as is admitted by Claimants, Claimants cannot sustain their burden to avoid summary judgment on this claim.

---

[6] The Rowing Association and the Boathouse note that Ms. Metcalf's opinion regarding the sufficiency of the number of lights purchased by NYRA is inconsistent with the evidence she has recognized. There were multiple light available and the four rowers, including Jim Runsdorf, had often used those lights supplied by NYRA at the Boathouse when they rowed prior to sunrise earlier that season. This issue is addressed in greater detail in the Boathouse and NYRA's Reply Memorandum of Law in Further Support of Motion *in Limine* to preclude the report and testimony of Harriet M. Metcalf (pp.3-4).

8

## POINT III: CLAIMANTS CANNOT PROVE THAT THE BOATHOUSE AND THE ROWING ASSOCIATION WERE NEGLIGENT FOR FAILING TO ADVISE THE ROWERS OF THE REQUIREMENT OF USING LIGHTS

Claimants also fallaciously argue that NYRA and the Boathouse were at fault for failing to advise the rowers of the requirement of using lights or enforcing their use. (Cl. Mem. in Opp. to Motion for Partial SJ p. 10) This is another inaccurate and a disingenuous argument. The four rowers had often, but not always, used lights when rowing before sunrise in the days, weeks, and months prior to the fatal incident. The incontrovertible prior knowledge of the statutory requirement for lights on the shell prior to sunrise conclusively establishes their knowledge of that safety requirement in statute. The law imposes no duty on NYRA or the Boathouse to remind and repetitively remind the rowers of the long-standing and well-known legal requirement for lights. *American Smelting and Refining Co. v. SS Irish Spruce*, 548 F.2d 56, 60 (2d Cir.), *cert. denied*, 431 U.S. 955 (1977).

Again, Claimants admit that the rowers were aware of the necessity to use a light when operating the rowing shell prior to sunrise. As Claimants explain, "[o]n the morning of October 24, 2005 Vincent Houston looked for lights in the Boathouse and could not find any Houston pp. 65-66, Exhibit 2. He did not mention to any of the other rowers that he could not find a light prior to their going out on the water morning nor did he tell Jim Runsdorf Houston p 68, Exhibit 2, Houston Declaration paragraph 4, Exhibit 4." (Cl. Mem. in Opp. to Motion for Partial SJ pp. 6-7). Further, Claimants in a desperate attempt to place liability on to the Boathouse and NYRA state that "More often than not there were no lights available and crew shell would row without lights Houston p 59-61, Exhibit 2" (Cl. Mem. in Opp. to Motion for Partial SJ p. 6). That statement is pregnant with admissions the rowers, including Jim H. Runsdorf, knew of the requirement to have lights on the shell prior to sunrise but repeatedly elected to ignore the law.

9

Moreover, there is no evidence that any of the rowers, particularly Mr. Runsdorf, ever reported to Mr. Curry - or anyone else at NYRA - the need for more lights. The rowers, who had the ability to communicate directly with each other and with Tom Curry, did not complain about any alleged shortage of lights either because there was no shortage or because they knew the primary duty to supply lights for the rowing shells was on the individual rowers and not on the organization. In any event, prior to and on the day of the fatal collision they repeatedly elected to operate the rowing shell without lights prior to sunrise in an unsafe manner in knowing and obviously intentional violation of the safety statute requiring lights prior to sunrise.

Despite the evidence discussed *supra,* according to Vincent Houston, NYRA and the Boathouse made available the legally required lights, on the morning of the collision, the rowers make a cursory search for lights and then consciously chose to get underway in the dark before sunrise without them. Simply put, there can be no causal relationship between any allegedly negligent aspect of the conduct and the harm resulting from that conduct. Thus, because it is beyond dispute that the rowers knew of the requirement to have lights to operate the shell prior to sunrise, now liability cannot be shifted to NYRA or the Boathouse for any failure to warn (and repeat warnings) the rowers to use lights.[7] *American Smelting and Refining Co. v. SS Irish Spruce,* 548 F.2d 56, 60 (2d Cir.), *cert. denied,* 431 U.S. 955 (1977). Further, it strikingly obvious from both logical and factual perspectives, that if the rowers routinely attempted to look for lights, and repeatedly brought lights when they rowed before sunrise, they were well aware of the requirement to have a light at such times on board the shell. Accordingly, the indisputable evidence presented by Claimants themselves, conclusively establishes that fault cannot be shifted

---

[7] As discussed in section IV. below, no legal duty can be placed upon NYRA and the Boathouse to warn of such an open and obvious danger involved with proceeding on a pitch black river before sunrise without a light.

to the Boathouse and the Rowing Association for any failure to advise, warn, or re-warn the experienced knowledgeable master rowers regarding the statutory requirement for a light. Claimants have failed, as a matter of law, to establish the causal connection necessary to prove liability on this issue. Thus, the claim must be dismissed.

### POINT IV: CLAIMANTS CANNOT PROVE THAT THE BOATHOUSE AND THE ROWING ASSOCIATION ARE LIABLE FOR ANY FAILURE TO MAKE AVAILABLE OR POST RULES

As Claimants clearly establish: "Mr. Curry testified that prior to the accident copies of the rules were posted in the boathouse Curry p. 52, Exhibit 3." (Cl. Mem. in Opp. to Motion for Partial SJ p. 5). Despite this fact, the surviving rowers allege that they did not see the posted rules. The fact that the rowers do not now recall the posted rules or did not see the posted rules is completely irrelevant on this motion for summary judgment. As explained above in Point III, there was no legal duty for NYRA or the Boathouse to warn again such experienced and knowledgeable master rowers of the requirements – including the need to use a light while rowing on a dark river prior to sunrise which is obvious. This was a statutory requirement well-known to the master rowers as Claimants' own evidence established when they conceded on prior days the rowers search for lights and brought them on the shell when they rowed prior to sunrise. Claimants' own evidence defeats their claim as a matter of law. "There is no duty to warn of a known condition that is in plain view and can be readily observed by the use of one's senses." *O'Neill v. United States*, 927 F. Supp. 599 (E.D.N.Y. 1996) *citing to Bombard v. Central Hudson Gas and Elec. Co.*, 205 A.D.2d 1018, 614 N.Y.S.2d 577 (3d Dep't 1994) (electric company not liable for injuries sustained by plaintiff electrocuted by power line where plaintiff saw wires and knew they were there); *Zaffiris v. O'Loughlin*, 184 A.D.2d 696, 585 N.Y.S.2d 94, 95 (2d Dep't 1992) (defendant not liable for failing to warn plaintiff who fell

through floor because room was well lit and condition of floor should have been readily observed); *Brown v. New York Medical College for Comprehensive Health Practice,* 162 A.D.2d 139, 556 N.Y.S.2d 84, 85 (1st Dep't 1990) (plaintiff should have noticed whether chair had a back, arms or wheels before trying to sit on it); *Powers v. Montgomery Ward & Co.,* 251 A.D. 120, 295 N.Y.S. 712 (4th Dep't), *affirmed,* 276 N.Y. 600, 12 N.E.2d 595 (1937) (department store not liable for plaintiff's injuries when she tripped over a display platform in defendant's store, as the condition was "in plain view of any person using his eyes").

Here, based on Claimants' own contentions, the record incontrovertibly demonstrates that in the days, weeks, months prior to the fatal pre-sunrise collision between READY JET GO and the rowing shell, the four rowers, Joyce, Houston, Lundwall, and Jim Runsdorf, repeatedly - but inconsistently - operated the rowing shell on the Harlem River before sunrise without the required lights. Sometimes they had lights, on other occasions, as Claimants' own witnesses' testimony recognizes, they routinely and consciously got underway without complying with the safety statute. This proves that the four rowers, including Jim Runsdorf were well-aware of the light requirement.

The fact that on October 24, 2005 it was well prior to sunrise and dark on the Harlem River and thus lights were required was easily observed by one's own senses and well-known. The statutory light statute was not an obscure rule known only to a selected few. The light rules have their origin in facts similar to the statutory requirement for lights on automobiles, motorcycles, and bicycle. At a minimum, lights provide a warning to other vessels and vehicles, as well as pedestrians, of the proximity of another vessel or vehicle and the dangers presented by the risk of contact or collision. The Master rowers obviously must have appreciated the necessity to use a light in such conditions. They had used lights under similar circumstances

before and obviously knew of the requirement for a light before sunrise. This is not a situation where the rowers were students, novice, or had no prior experience. Conversely, Jim Runsdorf had over twenty years of rowing experience and had rowed on the Harlem River repeatedly prior to the morning of October 24, 2005. His fellow rowers had similar experience and some had greater experience. There was no independent duty on behalf of NYRA of the Boathouse to further and repetitively warn the rowers of the requirement to have lights in this situation.

It would not have made any difference in the final analysis if either or both NYRA and the Boathouse had failed to make available the required lights, failed to warn or (re)educate the rowers regarding use of lights, and failed to post rules regarding lights. Claimants own expert, Captain Ahlstrom, has established this fact. Further, as Claimants correctly point out, "Edward Joyce testified that he rowed for Columbia for 4 years and that Columbia, Manhattan College and Fordham regularly rowed on the Harlem River before sunrise and after sunset and they never used lights Joyce p 115-117, Exhibit 1. Mr. Lundwall testified that he never rowed with lights Lundwall, 225-226, Exhibit 6." (Cl. Mem. in Opp. to Motion for Partial SJ p. 6). Further, according to the testimony of rower, Edward Joyce, "In the 1970's and 1980's no one rowing on the Harlem River or elsewhere used lights Joyce Exhibit 2, p 116" (Cl. Mem. in Opp. to Motion for Partial SJ p. 3).

Interestingly, light requirements similar to the one current Inland Navigation Rules have been in place for more than a century. ("Inland Rules", *33 U.S.C. §§* 2001-38). Thus, the requirement for rowing shells to use either running lights or a flashlight ("all around white light") has been in existence long before these rowers or experts attended college. The rowers' conscious decision to proceed without lights on the Harlem River in the dark prior to sunrise on the morning of October 24, 2004 cannot be the fault of either or both NYRA and the Boathouse.

13

As discussed *supra*, the rowers looked for lights and did not find any. At that time, they chose to proceed without waiting for a light and, without the use of a flashlight or an "all around white light". Ignorance of the law (which could not have been the case based upon the undisputed prior practice of searching for lights and occasionally bringing them on the shell prior to sunrise), or a blatant decision not to comply with the statutory requirement, cannot shift fault to either the Boathouse or NYRA. This is clearly established by Claimants' own undisputed proof. Accordingly, the claim must be dismissed as a matter of law.

Finally, even if NYRA and the Boathouse had a legal duty and further assuming that either or both had breached the duty to the rowers to re-educate and post the rules pertaining to the use of lights, Captain Ahlstrom has already made clear that lights would not have made a difference. No causation would exist to support Claimants' contentions that NYRA and the Boathouse were at fault for failing to make lights available to or (re)educate the rowers with respect to the requirement for lights. As Captain Ahlstrom stated, lights would not have made a difference, neither would any additional warning by the Boathouse or the Rowing Association. Accordingly, Claimants cannot meet their burden with respect to proving that the Boathouse or the Rowing Association were liable.

## **CONCLUSION**

Claimants' expert, Captain Ahlstrom, concedes that the absence of the required lights on the rowing shell did not cause the collision between the rowing shell and READY JET GO. The uncontroverted evidence, provided by Claimants, demonstrate that lights were made available by NYRA at the Boathouse and that the rowers, including Mr. Jim H. Runsdorf knew of the light requirements of the safety statute to have complying lights on the rowing shell when operated before sunrise and had done so sporadically prior to the fatal collision. Since the rowers, including Mr. Runsdorf, knew of the light requirement imposed by federal law any failure to re-warn or to re-educate could not have caused the collision. Accordingly, the claims against NYRA and the Boathouse on these theories should be dismissed as a matter of law.

Dated:   New York, New York
         November 22, 2011

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/ Lawrence B. Brennan
Lawrence B. Brennan (LB4078)
*Attorneys for Peter J. Sharp Boathouse* and
*New York Rowing Association, Inc*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000

Of Counsel:

Lawrence B. Brennan (LB4078)
Brooke Travis (BT 2355)
Abigail Nitka (AN 8780)

15

4831143v.1

## CERTIFICATE OF SERVICE

I, Brooke Travis, hereby certify that I electronically filed the attached Reply Memorandum of Law in further Support of the Motion for Partial Summary Judgment on behalf of Peter Jay Sharp Boathouse, Inc. and New York Rowing Association, Inc., with the Clerk of the Court using the CM/ECF system which will send notification of such filing electronically to the following:

Marc Jay Bern, Esq.
Marina Zapantis, Esq.
Napoli Bern Ripka Shkolnik, LLP
*Attorneys for the Runsdorf Claimants*
350 5th Ave., Ste. 7413
New York, New York  10118

James E. Mercante, Esq.
Michael E. Stern, Esq.
Rubin, Fiorella & Friedman, LLP.
*Attorneys for Mr. Andrew Harnett*
292 Madison Avenue, 11th Fl.
New York, New York  10017

Jacob Shisha, Esq.
Tabak, Mellusi & Shisha
*Attorneys for the Runsdorf Claimants*
29 Broadway
New York, New York  10006

/s/ Brooke Travis